## WESTERN & ATLANTIC R. R. CO. *v.* VOILS.

1. A writ of error to the Supreme Court lies from the court established " in the city of Cartersville in the county of Bartow " by the act of October 10th, 1885.   Although this act does not itself provide for such writ of error, it may be sued out by virtue of section 4266 of the Code, which was enacted for the purpose of carrying out a constitutional provision similar to that now embraced in paragraph 5 of section 2, article 6 of the Constitution, (Code, §5133.)

2. A person who goes to a flag station on a railroad at which there is no ticket office, for the purpose of boarding a train, is, upon properly signifying an intention to get upon a passenger-train which has actually stopped, entitled to the rights of a passenger.

3. Where a train stopped at such a station, and after an employee thereon had assisted some passengers to alight, started to move on, and the plaintiff then informed this employee of her desire to get aboard, and he thereupon signalled to the engineer to stop the train, which was done, the train stopping at a low place where it was difficult to mount the platform steps, and the employee then undertook to assist the plaintiff to get upon the train, it was, under these circumstances, a question for the jury whether or not the employee in so doing was acting within the scope of his duty.

4. Upon the assumption that he was so acting, the company was liable for injuries received by the plaintiff on account of a fall

occasioned by the employee's negligence in rendering the assistance mentioned.

5. There was evidence to warrant the jury in finding that the defendant's servant was acting in the line of his duty in assisting the plaintiff to board the train, and that his negligence caused her injuries; and though the evidence as a whole does not make a strong case against the company, this being the second verdict in her favor, and the trial judge having refused to set it aside, this court will not interfere.

May 19, 1896.  Argued at the last term.

Action for damages. Before Judge Akin. City court of Cartersville. March term, 1895.

Mrs. Voils sued the railroad company for damages, and obtained a verdict for $250. This was set aside on motion, and at the next trial she obtained a verdict for $325. Defendant again moved for a new trial, which upon the hearing was denied, the judge expressing an opinion, however, that it was against the weight of the evidence.

It appears that the plaintiff was at Best's Sideling, a flag-station, for the purpose of boarding defendant's train as a passenger. The train stopped with the entrance to the main passenger-coach on the crossing where the distance from the bottom step to the ground was comparatively easy. The flagman of the train stepped off and assisted a lady, gentleman and two children to alight from the coach to the ground. Not noticing the plaintiff, who was standing some little distance away, waiting for the passengers to disembark, he motioned to the engineer, and the train started to move off. Plaintiff asked the flagman if he was going to leave her; whereupon he signalled for the train to stop, and it did stop after moving eight or ten feet. The entrance to the coach was then past the crossing, and the bottom step was much higher from the ground than it was when over the crossing. The evidence is conflicting and contradictory as to the distance from the ground to the step at the second stopping place, there being some testimony for plaintiff that it was about half her height or about two and a

· half feet, and other testimony that it was not over twenty-two inches high. The flagman took plaintiff by the arm and led her to the step, and he and a young man who came to the place at the same time plaintiff came, lifted her by the arms to assist her to step into the coach. Plaintiff claims that she was thrown with so much force and impetuosity that she failed to get a footing on the lowest step or a firm hold to the car railing and was thrown violently forward upon the platform, striking and scraping her shin bone on the edge of one of the steps and knocking the breath out of her. She went into the car and showed the wounded place to the conductor and flagman. It was badly bruised, the skin scraped off, and some little blood was flowing. She reached her destination and walked to her home, and to a doctor's office, where she procured salve for her leg. It swelled very greatly, and she indured much agony of pain from it, and was threatened with erysipelas therein. She was so badly hurt that she could not gather her crop, etc. The testimony for defendant was to the effect that, if hurt at all, she was very slightly hurt; that the flagman assisted her up the steps without any force or undue haste; that she did not fall, but entered the car safely, and then she complained of her leg having been hurt. When she showed the same to the conductor and flagman, the skin was not broken but only a little reddened, etc. There was testimony that it was customary for the flagman to assist lady passengers upon and off the train.

The motion for new trial alleges, that the verdict is contrary to law and evidence, that the court erred in refusing to grant a nonsuit, in refusing to give charges to the jury as requested, and in various portions of the charge as given. The charges refused are as follows:

"There is no duty imposed by law upon defendant or its agents to assist passengers on or off the train, their duty being to stop the trains long enough to enable passengers to get on or off trains themselves.

"If an agent of the defendant corporation was not acting as his duty required in assisting the passenger on the train but did so only as a courtesy or an act of politeness, and in so assisting her negligently contributed to her injuries, such acts of negligence not in the line of his duty will not bind the defendant or enable plaintiff to recover, and unless she show some legal negligence on the part of the defendant, she cannot recover.

"If you believe from the evidence that the plaintiff had purchased no ticket, and the pleadings show that there is no station or depot at Best's Sideling, then the plaintiff was not a passenger in the legal sense until she had gotten upon the car of the defendant, and any injury received while going upon the steps by virtue of the assistance given her by the flagman would not render the defendant liable, and the plaintiff cannot recover.

"I further charge you that the contract made by the defendant to carry the plaintiff safely, did not include a promise to assist her on the train safely, and any injury received while getting on the train would not be a violation of the contract of carriage, and for such injury she cannot recover.

"I further charge you that the burden of proof is on the plaintiff to make out a case unless she were a passenger at the time of the injury, and to do so requires her, by a preponderance of the evidence, to show negligence on the part of defendant or its agents.

"I further charge you that plaintiff cannot recover in this action for any fears of anticipated danger or suffering resulting from her thinking that she might lose her leg by amputation or that she would suffer from anticipated erysipelas, as these elements of damage are too remote and are not grounds for compensation."

The instructions assigned as error are as follows:

"Although the law itself imposes no such duty upon the defendant, yet if the defendant's servants, acting within

the scope of their employment, undertook to assist the plaintiff upon the train and did so negligently and thus injured the plaintiff, the defendant would be liable; but if a servant of the defendant undertook to assist the plaintiff upon the train simply as an act of courtesy and not in his line of duty as such servant, the defendant would not be liable for any negligence of which such servant might be guilty in so acting outside the line of his duty nor for any damage resulting in consequence thereof. Whether or not such conduct would or would not be in the line of such servant's duty, and within the scope of his employment, is for you to determine; and in so determining, you may consider whether or not it was customary for the defendant's servants to assist ladies in getting aboard the train, and whether such custom was known to defendant.

"Now, I charge you, if the defendant's servant, in the line of his duty and within the scope of his employment, undertook to assist the plaintiff upon the cars, and in so doing injured the plaintiff by his negligence or carelessness, although that negligence may have been slight, the plaintiff is entitled to recover, unless by the exercise of ordinary care she could have prevented the consequences of such negligence. But, notwithstanding such negligence, if it existed, if the plaintiff by the use of ordinary care could have prevented the consequence of such negligence, she cannot recover. Again, if the defendant's servant thus acting within the line of his duty was negligent, and if the plaintiff could not by the exercise of ordinary care have prevented the consequences of such negligence, she may still recover, although she may have been negligent herself; but in this event the amount of damages would be diminished in proportion to the amount of fault attributable to her."

*Payne & Tye* and *J. W. Harris, Jr.*, for plaintiff in error. *Neel & Swain*, contra.

Simmons, Chief Justice.

1. This case comes before us upon a writ of error from the court created and established by an act entitled " an act to establish a city court in the county of Bartow," etc., approved October 10, 1885 (Acts 1885, p. 487). A motion to dismiss the writ of error was made upon the ground that the act does not provide for reviewing the judgments of the court by bill of exceptions and writ of error from that court to the Supreme Court.

The act, it is true, does not itself provide for this, but under paragraph 5 of section 2, article 6 of the constitution, which declares that the Supreme Court shall be a court for the trial and correction of errors "from the city courts of Atlanta and Savannah, and such *other like courts* as may be hereafter established in other cities," and under section 4266 of the code, which was enacted for the purpose of carrying out a provision of the constitution of 1865, similar to that embraced in this paragraph of the present constitution, and which declares that "the mode now prescribed by law for carrying cases from the superior courts to the Supreme Court shall obtain in and apply to the city courts of the cities of Savannah and Augusta, and such other like courts as may be hereafter established," no express provision authorizing writs of error from the court in question to the Supreme Court was necessary. The court is clearly within the term "like courts," as used in the constitution and in the section of the code here referred to. It is designated in the act as a "city court," and is, by the terms of the act, located "in the city of Cartersville"; and the act provides that it shall be governed by the same laws, and shall have the same power as to pleading, practice, modes of procedure, etc., as the superior court, and shall have power to grant new trials. See on this subject the reasoning of Atkinson, J., in *Western Union Telegraph Co.* v. *Jackson, ante,* 207. The provision as to bills of exceptions to the superior court, con-

tained in section 20 of the act referred to, was held unconstitutional in the case of *Maxwell* v. *Tumlin,* 79 *Ga.* 573, and does not affect the question now before us.

2-5. Mrs. Voils, desiring to take passage on defendant's train, went to one of its flag stations, and as the train was approaching the station a person who accompanied her to the station signalled to it to stop. The train stopped, and one of the servants of the company assisted certain passengers in alighting at the station. After these persons had left the train and before the plaintiff could get upon it, it began to move off, and she asked the employee who had assisted the other passengers in alighting whether he was going to leave her; whereupon he signalled for the train to stop. It stopped at a place where the track was considerably higher than the ground at the side of it, so much so that the plaintiff could not enter the car without assistance. The employee above mentioned undertook to assist her to mount the platform of the car, and in doing so, she alleges, negligently pushed her so that she fell upon the platform, and received certain injuries, for which she seeks to recover in this action. The railroad company denied liability, insisting that the plaintiff was not a passenger, and that if she was, it was not within the scope of the duty of the company's servants to assist her upon the train. It appears from the evidence that although this station was not a regular stopping place for trains, and there was no ticket office there, it was customary for trains to stop there when signalled, in order to take on persons desiring to take passage thereon. When a person goes to such a station, and by giving proper signals signifies his intention to become a passenger, and the train is stopped for the purpose of taking him on, he is, when attempting to enter the train, a passenger and entitled to all the rights of a passenger, although he has not purchased a ticket. Hutchinson, Carriers, §556 *et seq.*; Ray, Negligence of Imposed Duties, Passenger Carriers, p. 5 *et seq.*; Shearm. & Redf. Neg. (4 ed.), §490;

Brien v. Bennett, 8 Car. & P. 724; Murphey v. R. Co., 43 Mo. App. 383; s. c. 4 American Negligence Cases, Hamilton, p. 383.

Whether it is generally the duty of the conductor or other servants of a railroad company to assist passengers to enter its trains, or not, we think there was, under the particular facts of this case, such a duty on the part of the defendant's servants. If the train had stood where it first stopped and where the other passengers alighted, the plaintiff would not have needed any assistance, for the height of the first step from the ground at that point was not so great that she could not get upon the platform without assistance; but when the train moved off from that place, and stopped at a place where she was unable to get on the platform without assistance, and she was invited to enter the car at this place, it was the duty of the company to render her, by its servants, such assistance as may have been necessary; and if the servant who undertook to render her such assistance was negligent in the manner in which he did so, and by reason of his negligence she was injured, she was entitled to recover against the company. But whether this is so or not, the trial judge left to the jury the question whether it was within the scope of this servant's duty to assist the plaintiff in entering the train or not; and there was sufficient evidence to support their finding that it was within the scope of his duty.

There was no error in refusing to charge as requested by the defendant, and no error in the instructions complained of which requires a new trial; and though the evidence as a whole does not make a strong case against the railroad company, this is the second verdict in favor of the plaintiff, and the trial judge having refused to set it aside, this court will not interfere.          *Judgment affirmed.*