GEORGIA & FLORIDA RAILWAY COMPANY *v.* TAPLEY.

1. Considering the allegations of the petition together, the overruling of the demurrer did not constitute error.
2. Although the court might have stated the contention of the defendant somewhat more explicitly with reference to the plaintiff having been lying asleep upon a board beside the track, in the absence of a timely written request the charge on that subject was not so wanting in fullness as to require a reversal.
3. Under the pleadings and evidence there was no error in giving in charge Civil Code (1910) § 2780.
4. Where one goes to a flag-station on the line of a railway company at which passenger-trains are accustomed to stop to take on passengers upon being signaled, and gives a proper signal to indicate his intention to get upon an approaching passenger-train, he does not ipso facto become a passenger; and it was error to charge the jury that he would be considered as a passenger.

DECEMBER 17, 1915.

Action for damages. Before Judge Rawlings. Montgomery superior court. October 9, 1914.

*Saffold & Jordan, William H. Barrett,* and *M. B. Calhoun,* for plaintiff in error.

LUMPKIN, J. W. A. Tapley, by his next friend, brought suit against the Georgia and Florida Railway Company, to recover damages for a personal injury. A verdict was rendered in his favor for $500. The defendant moved for a new trial, which was refused, and it excepted.

1. Taking the allegations of the petition together, there was no error in overruling the demurrer.

2. While the court might have stated to the jury somewhat more explicitly the contentions of the defendant, when the entire charge is considered it can not be held that he entirely omitted to refer to the contention that the plaintiff was asleep beside the track; and he informed them that the plaintiff must recover under the allegations of his petition, or not at all.

3. The plaintiff contended, that he went to a flag-station on the line of the defendant railway company and gave a signal for a passenger-train to stop, for that purpose stepping upon the track and using a lighted paper, it being dark; that the whistle was blown but the train did not stop, and while he was endeavoring to leave the track his foot was caught under the rail, and he was caused to fall in a position from which he could not entirely extricate himself

before the train passed and injured him; and that the catching of his foot was caused by the fact that the surface was not made level at that point where trains were flagged and passengers boarded them, and from the fact that the train did not stop, rendering it necessary for him to leave the track so as to endeavor to avoid injury. If the plaintiff had not become a passenger at the time of the injury, the measure of care due to him by the defendant was ordinary care. If he had become a passenger when the injury occurred, the measure of diligence due to him was extraordinary care. In the former event, Civil Code (1910) § 2780 would be applicable. In the light of the pleadings and evidence, there was no error in giving it in charge. The suit was not entirely dependent upon the proposition that the plaintiff had become a passenger before he was injured, and it was not erroneous to give in charge the law as contained in that section, referring to injuries generally done to persons or property by the running of the locomotive, or cars, or other machinery of a railroad company.

4. The court charged the jury that when a person presents himself at what is known as a "flag-station," or a railroad-station at which there is no ticket-office, for the purpose of boarding a train which is running for the carriage of passengers, upon properly signaling an intention to get upon such passenger-train he would be considered as a passenger and would be entitled to the rights of a passenger. Later he made a more concrete application of the principle thus announced to the situation of the plaintiff, and instructed the jury that if the plaintiff presented himself at a point where the train was usually signaled, and did signal the passenger-train and indicated that he desired to become a passenger, in contemplation of law he was thereafter to be treated as a passenger, and the railroad company would be bound to the use of extraordinary diligence in regard to him.

Efforts to lay down a comprehensive definition of the word "passenger," or, in a single statement, to exhaust all possible circumstances under which the relation of carrier and passenger may exist, have not proved very successful. The varying facts under which that relation may begin, continue, and terminate, render such a complete definition, applicable to all cases, difficult if not impossible. It is easy to declare that where one has purchased a

railroad-ticket entitling him to transportation upon a train, and has at the proper time taken his seat in the proper car for that purpose, he is a passenger; but he may have entered the train without a ticket, yet with the means and intention to pay for transportation, or he may be in the act of boarding the train at. a proper place for that purpose, and with a ticket or the necessary means of transportation, when injured; or he may have procured a ticket and be waiting in a waiting-room set apart by the company for that purpose, while the train is being made ready for departure. These or other variations in circumstances may enter into the question of whether or not the relation has begun at a given time. One definition sometimes given is that a passenger is one who travels in some public conveyance by virtue of a contract, express or implied, with the carrier, as to the payment of fare or that which is accepted as its equivalent. As just indicated, however, this definition, like some others which have been made, does not comprehend all possible situations. Indeed, as a general rule, every person not an employee, being carried by the express or implied consent of the carrier upon a conveyance usually employed in the carriage of passengers, is presumed to be lawfully upon it as a passenger. After pointing out the difficulty of making an entirely comprehensive definition of the word, in 2 Hutchinson on Carriers (3d ed.), § 997, it is said: "There are two main elements in the legal definition of a passenger: first, an undertaking on the part of the person to travel in the conveyance provided by the carrier; and second, an acceptance by the carrier of the person as a passenger. Whether either or both of these elements exist is ordinarily a question for the jury." In section 1005 of the same work it is said: "But a person may become a passenger, without having come into the carrier's vehicle, if the surrounding circumstances show an intent on his part to become a passenger and an acceptance of him by the carrier as a passenger." In Moore on Carriers (2d ed.), 972, the rule is thus stated: "The relation of carrier and passenger is a contract relation, which commences when the passenger has put himself into the care of the carrier, or directly within its control, with a bona fide intention of being transported, and the carrier has expressly or impliedly received and accepted him as a passenger; and of necessity the existence of the relation is commonly to be implied from the attending circumstances. Where one has made

a contract for passage upon a vehicle of a common carrier, and has presented himself at the proper place to be transported, his right to care and protection begins." Of course the author also meant that this should be done at the proper time as well as at the proper place. Id. pages 954, 982; 1 Fetter, Carriers of Passengers, § 228; Dobie, Bailments and Carriers, 537 et seq.; *Central R. Co.* v. *Perry,* 58 *Ga.* 461.

In *Western & Atlantic R. Co.* v. *Voils,* 98 *Ga.* 446 (26 S. E. 483, 35 L. R. A. 655), it was held that when a person goes to a railway-station where there is no ticket-office, but where it is customary for trains to stop when signaled in order to take on persons desiring to take passage, and by giving proper signals signifies his intention to become a passenger, and the train is stopped for the purpose of taking him on, he is, when attempting to take the train, a passenger, and is entitled to all the rights of a passenger, although he has not purchased a ticket. A mere intention on the part of a person to become a passenger, without regard to any act on the part of the company, does not, ipso facto, constitute him such a passenger. Neither does the mere giving of a signal at a flag-station make a person giving the signal a passenger on an approaching train.

The street-railway and omnibus cases are not in all respects analogous to those involving an effort to take passage on a steam-railway train at a flag-station. One difference which will be readily perceived arises from the fact that street-cars and omnibuses travel along highways which they do not own and over which other vehicles and pedestrians pass, while steam railways use a right of way along a fixed road-bed, and in many places have waiting-rooms at fixed places for the reception of passengers. Also street-cars and omnibuses usually stop either whenever signaled, or at certain short intervals upon signals, and passengers generally enter these conveyances in the public streets or at street-crossings. Nevertheless the reasoning in cases involving the question of whether a person has become a passenger upon such a vehicle may be useful in considering the same question with reference to whether one has become a passenger on a steam-railway train at a flag-station. See, in this connection: 4 Ruling Cases, 1003, § 471; Chicago Traction Co. v. O'Bryan, 219 Ill. 303 (76 N. E. 341); Webster v. Fitchburg R. Co., 161 Mass. 298 (37 N. E. 165, 24 L. R. A. 521);

Hogner *v.* Boston Elevated Ry. Co., 198 Mass. 260 (84 N. E. 464, 15 L. R. A. (N. S.) 960, and note) ; Bruff *v.* Ill. Cen. R. Co. (Ky.), 121 S. W. 475, 24 L. R. A. (N. S.) 740, and note. In Karr *v.* Milwaukee Heat etc. Co., 132 Wis. 662 (113 N. W. 62, 13 L. R. A. (N. S.) 283, 122 Am. St. R. 1017), the Supreme Court of Wisconsin, in applying the rule of implied acceptance of a passenger, goes further than most other courts have gone. See note to that case in 13 L. R. A. (N. S.) supra.

From the foregoing discussion, it is evident that the trial court erred in instructing the jury to the effect that one who goes to a flag-station, and signals a passenger-train, thereby, without more, becomes a passenger.

*Judgment reversed. All the Justices concur.*