VAN SICKLE v. GRAND RAPIDS, GRAND HAVEN & MUS-
KEGON RAILWAY CO.

1. CARRIERS — STREET RAILWAYS — NEGLIGENCE — SPEED OF CAR—
EVIDENCE—ADMISSIBILITY.
   In an action against an interurban electric railway company
   for the alleged negligent killing of plaintiff's decedent,
   who was struck by one of defendant's freight cars which
   ran by without stopping at a highway crossing where de-
   ceased was waiting to take a passenger car into the city
   to go to his work, it was competent for plaintiff to prove
   the speed of the car at the time of the accident.

2. SAME — TRIAL — EVIDENCE — APPEAL AND ERROR — HARMLESS
   ERROR.
   Where witness testified that he noticed how fast the passing
   car went by, the question, "Will you tell the jury what your
   judgment is as to the speed of the car," was improperly
   excluded, but where he subsequently testified that, as com-
   pared with the speed of passenger cars which did not stop
   that he had seen go by, this car which caused the acci-
   dent was running a little slower, the ruling did not amount
   to prejudicial error.

3. SAME—RULES AND REGULATIONS—EVIDENCE—ADMISSIBILITY—
   PRESUMPTION—NOTICE.
   Testimony as to defendant's promulgated rules, printed and
   posted in its railway waiting rooms to advise and warn
   the public, was competent not only for the purpose of
   showing that defendant operated its car on the occasion
   of the accident as was customary and in strict compliance
   therewith, but also as tending to show that deceased, who
   had traveled almost daily over defendant's line for two
   years presumptively had knowledge thereof brought home
   to him.

4. SAME—CONTRIBUTORY NEGLIGENCE—DUTY TO LOOK.
   Under the conditions shown and necessarily known to de-
   ceased, it was incumbent upon him, in the exercise of rea-
   sonable care, before attempting to cross the track from the

waiting room to where he expected to board the car, to look and see that the approaching car was not in dangerous proximity.

5. SAME.

Even if deceased was a passenger, that fact would give him no right to step upon the track in close proximity to a rapidly approaching car.

6. SAME—RELATION OF CARRIER AND PASSENGER—INTENDED PASSENGER.

Where the car which deceased expected to board was a freight car and not a passenger car as he erroneously supposed, and, when signaled to stop, answered with two whistles, signifying it would not stop, he was not an invited, accepted or prospective passenger, since an answering notice of intention to stop when signaled is generally held as necessary to establish the relation of carrier and passenger under such conditions.

7. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT.

Under the undisputed facts the trial court properly held, as matter of law, that plaintiff had failed to make out a *prima facie* case of actionable negligence on the part of defendant, and that plaintiff's decedent was guilty of contributory negligence, precluding recovery.

Error to Muskegon; Vanderwerp (John), J. Submitted January 6, 1921. (Docket No. 68.) Decided March 30, 1921.

Case by Valda Van Sickle, administrator of the estate of Philander Van Sickle, deceased, against the Grand Rapids, Grand Haven & Muskegon Railway Company for the alleged negligent killing of plaintiff's decedent. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Colin P. Campbell* (*Christian A. Broek*, of counsel), for appellant.

*Carroll, Kirwin & Hollway*, for appellee.

Steere, C. J. Plaintiff brought this action as administrator to recover damages for the death of his intestate, Philander Van Sickle, who was instantly killed by one of defendant's northbound interurban cars at a highway crossing known as Soderin, located on defendant's line between Fruitport and Muskegon Heights. At conclusion of plaintiff's testimony the court granted defendant's motion for a directed verdict of no cause of action on the ground that no actionable negligence on defendant's part was shown and, under the undisputed facts, deceased was guilty of contributory negligence precluding recovery. Plaintiff assigns error as follows:

"The court erred in sustaining defendant's objections to the cause (question) : 'Now, will you tell the jury what your judgment is as to the speed of the car.'
"The court erred in receiving in evidence the printed notice which was posted up in the station at Soderin crossing.
"The court erred in permitting the witness, Valda Van Sickle, to testify as to his knowledge as to what was meant by two blasts of the whistle after signaling the car to stop.
"The court erred in directing the jury to render a verdict without leaving their seats in favor of the defendant."

The undisputed testimony showed that deceased was a man about 64 years of age who had lived with his family for many years on a farm which he owned, located about three-quarters of a mile east of Soderin on an east and west highway which crossed defendant's substantially north and south track at the named crossing. For two years prior to his death he had been employed in a factory at Muskegon Heights, going daily to and from his work on defendant's line, taking and leaving the cars at this crossing. He was familiar with the location and knew there were both

mail and freight cars running over defendant's line during the morning hours.

Soderin is a point on defendant's line south of Muskegon Heights at which only its passenger cars stopped, when signaled, to receive passengers and to discharge those desiring to get off there. It is a country crossing in a sparsely settled neighborhood with no houses in its immediate vicinity, and a small building to shelter waiting passengers had been constructed there by contributions from defendant and farmers living in that locality. This stood on the north side of the highway, within its limits, on the west side of defendant's track within about four feet of the west rail with its door to the east. It was solely for temporary shelter. No station agent was kept there, no tickets were sold there and no heat or light provided.

Plaintiff, a son of deceased, was the only witness who testified to the circumstances of the accident. On December 20, 1916, he with deceased and a neighbor named Zimmerman went to this crossing a little after 5 o'clock in the morning, as was their custom, to take a 5:30 passenger car to Muskegon Heights for their day's work, all being there employed in the same factory. When they arrived there deceased and the two young men went into this building to wait and watch for the expected 5:30 northbound passenger car, which they knew must be flagged before it would stop by signaling with the arm in daylight and with a light when it was dark. They all carried flashlights for that purpose. At that time of the year it was yet dark when the 5:30 car passed Soderin. After they had been waiting for a time plaintiff saw the light of a car coming from the south. Assuming it was the passenger car, they all stepped out of the shelter house for the purpose of stopping it by signaling and getting on board. Plaintiff and Zimmerman were ahead and one or both of them signaled the car with his flashlight,

crossing the track to the east which was the right side of the car to board it. Plaintiff testified that he crossed to the right side first, then signaled, also that he did not remember whether he or Zimmerman signaled, and that after he had crossed and stood about 2½ feet east of the track Zimmerman signaled when standing about the middle of the track, and then stepped over to the right. The oncoming car answered with two short blasts of its whistle signifying it would not stop, the answer for stopping being a single blast, and the two young men seeing it was a freight car and not going to stop shouted a warning to deceased, who was following close behind them, to "Go back." Plaintiff testified that the car was about 8 rods away when he saw it was a freight car and hollered to his father to go back, and about a second later he was struck. He also testified that his father was not going fast, but—

"was walking and when Mr. Zimmerman flagged the car in the center of the track my father was in the doorway or had taken one step from the doorway. We hollered, 'Go back.' I couldn't tell what Mr. Zimmerman hollered. I wasn't in there, I couldn't tell you. I was about five or six feet from Mr. Zimmerman. He said it was a freight car and to go back. Mr. Zimmerman said that. He hollered that to my father. At that time my father was on the track. The car was pretty near there then. That was after he hollered to him. Right after Mr. Zimmerman hollered to him we both hollered so there was a warning given to him twice. * * * The occasion of calling my father first by Mr. Zimmerman and then by both of us was that we realized that the car wasn't going to stop. * * *

"Q. As Mr. Zimmerman stepped back on the east side of the track, was it then he called to your father the first time?

"A. Yes, sir.

"Q. And what was it he said, 'Stay there,' didn't he?

"*A.* 'Stay there.'

"*Q.* And then in a second after, a short period, you both called to your father to stay there, or words to that effect, did you not?

"*A.* Yes, sir."

Witness testified that printed directions, or notices, were posted up at stations or waiting rooms of defendant and identified a copy produced as one of such notices, like that posted at Soderin. It was entitled, "Notice to the Public"—beginning and advising in part as follows:

"Safety first, last and always. When you flag an interurban car that does not stop for passengers at the place flagged, it will answer by two short blasts of the whistle. If it does intend to stop on your signal it will give one short blast of the whistle. * * * Freight cars will not stop for passengers. Always stand well back as the car approaches. Before crossing the track, look in both directions to see that a car is not in close proximity. You may stumble and fall in front of it." * * *

It also appeared that it was customary for the northbound passenger cars when signaled to stop on the north side of the highway, with the rear platform in it, and passengers were required to board the cars on the right, or east, side.

Deceased's wife testified that he was an able-bodied man who worked every day in the factory at Muskegon Heights, beginning in 1914, "was in the habit of going back and forth to work on the car and had been doing so for two years." Plaintiff testified that he with his father had been taking the car every week day for several months, and his father longer, that—

"on other mornings when we signaled the car the motorman answered with one blast of the whistle, but this morning he answered with two blasts. From my experience in taking cars, I know what one blast meant."

Zimmerman, the only other living witness to the accident, was not called to testify, although he was working at the factory in Muskegon Heights on the day of the trial and plaintiff had talked with him the night before, after seeing his counsel.

Of plaintiff's first assignment of error, directed to exclusion of the question, "Will you tell the jury what your judgment is as to the speed of the car," the ruling considered in the abstract seems questionable, as the witness testified that he noticed how fast the passing car went by and it was competent to prove its speed at the time of the accident; but he also stated in that connection that he had never driven an automobile nor in his trips over the line ever "observed the speed cars were traveling or estimated the rate they were going." After the objection was sustained he testified that on previous occasions he had been at this crossing when passenger cars were due there and did not stop, and as compared with the speed of those cars which ran through without stopping this freight car which struck his father was "running a little slower." With that fact established we cannot find under the circumstances of this case that the ruling was prejudicial error.

Of the second and third assignments of error it is urged that the testimony as to rules being posted up and what was meant by the whistle, or what plaintiff knew it meant, was inadmissible because knowledge of the posted rules or meaning of the answering whistle was not brought home to deceased.

It was not only competent for defendant to show in cross-examination of plaintiff that it operated its car and answered signals on that occasion as was customary in strict compliance with its promulgated rules printed and posted in its railway rooms to advise and warn the traveling public; but also as tending to show that deceased, after two years' almost daily familiarity

with that crossing where such notice was posted, and his experience in travel on defendant's cars as a passenger, presumptively had that knowledge brought home to him.

No question of discovered negligence or application of the doctrine of last clear chance is involved here, for plaintiff's own testimony shows that so short a time intervened between deceased stepping from the door of the shelter house, but four feet away, and upon the track immediately in front of the car that it was impossible in the interval for the motorman to check his speed to an effectual extent before the car struck deceased.

Plaintiff's claim of negligence on defendant's part is predicated on the assumption that deceased was an invited or accepted passenger to whom it owed the duty of especial care prescribed when such relations exist. The specific charge of negligence stated in the declaration is as follows:

"Yet the said defendant, not regarding its duty in that behalf, did not use due and proper care that the said plaintiff's intestate should be safely and securely carried and should be kept safe from injury by the said defendant while at the said station, but wholly neglected to do so and suffered and permitted one of its trains or cars to run through the said station of Soderin at a high, reckless, negligent and dangerous rate of speed and without any fault or negligence on the part of the said intestate, defendant carelessly and negligently, with great force and violence, ran a train and cars through the said station at a high, reckless, negligent and dangerous speed and ran said train and cars over and upon plaintiff's intestate," etc.

Soderin crossing was not a regular stopping place for any of the cars on defendant's line. The only attributes of a station imputable to the place were that it was a country highway crossing on defendant's line at which its passenger cars stopped for waiting passengers when signaled, or to discharge those bound for

that point. Defendant's single track was on its private right of way except as it crossed the highway, substantially at right angles. The ground was level there, and the usual sign for railway crossings in the country, including a warning to "look out for the cars," was conspicuously displayed in large letters at a proper elevation. As the usual stopping place for northbound passenger cars when signaled was on the north side of the crossing with the rear platform in the highway practically opposite the door of the little waiting room, also within the highway on its north side, it required but a few steps, and seconds of time, to go from the door of the waiting room past the rear of the car to the steps of its right rear platform to get on board. At the door of the waiting room, close to the track on which an approaching car would either pass or stop, there was a clear view in either direction along the track.

Under the conditions shown here and necessarily known to deceased it was incumbent upon him in the exercise of reasonable care to look before attempting to cross the track and see that the approaching car was not in dangerous proximity. There were no diverting hazards to look out for. In a place with which he was familiar the only danger for him to avoid was a single approaching car, necessarily coming on the single track in front of him. It is unquestioned that if he looked he must have seen the car. In *Gardner* v. *Railroad Co.*, 97 Mich. 240, where it was claimed the operation of a near-by switch engine on another track distracted plaintiff as he was about to cross a track on which a train was approaching, it was said:

"No one disputes that, if he had but looked, he certainly would have seen the train. It is evident, therefore, that he did not look, or, if he did, he saw the train, and carelessly attempted to cross in front of it;

and in either case he was guilty of such negligence as to preclude a recovery. (Citing cases.)    *    *    * He was bound to exercise that degree of care that the situation and surroundings demanded of a prudent and careful person. If the switch engine was making a noise by the bell and by letting off steam, it, at least, was not an obstruction to his view to the east, and it is not so claimed. If he had looked eastward, he would have seen the train before he stepped upon the track. The ringing of the bell and the blowing off of steam from the switch engine did not relieve him from the duty of looking in the other direction. One look eastward, and one less step taken, and he would not have been upon the track."

*Vide*, also, *Manos* v. *Railway*, 168 Mich. 155.

That general rule as to the duty of one about to cross a railway track is well settled and has been repeatedly affirmed by this court. In avoidance of it plaintiff urges that the rule does not apply because deceased was there as a prospective passenger to whom defendant owed the duty of special care to guard him from injury. The fact that he was a passenger would give him no right to step upon the track in close proximity to a rapidly approaching car. *Derring's Adm'r* v. *Power Co.*, 122 Va. 517 (95 S. E. 405). But he was not an invited, accepted or prospective passenger of defendant for this freight car, which was "running a little slower" than the passenger cars did when they ran through without stopping, and when signaled the motorman promptly answered with two blasts of the whistle that the car would not stop, giving notice that it was not a passenger car which would stop for those who signaled and, in effect, refused them transportation. Under such circumstances at such a crossing, there was no implied contract of carriage, for all defendant's cars passed this crossing without stopping except passenger cars which had a passenger to discharge there, or had been signaled and in response gave notice of intention to stop by one short

blast of the whistle. It is generally, but not universally, held that an answering notice of intention to stop when signaled is an acceptance which establishes the relation of carrier and passenger, being evidence of an intent or proposal on the one part to become a passenger and on the other part his acceptance as such by the carrier, thus by implication creating that contract relation. Such were the distinguishing facts in *Karr* v. *Traction Co.*, 132 Wis. 662 (113 N. W. 62), cited by plaintiff. Here the contrary appears. That distinction is pointed out in *Rice* v. *Railway Co.*, 208 Mich. 123, where plaintiff's testimony showed he signaled an approaching car at a crossing where it was conceded the car should have stopped when signaled, and was answered in the usual way to notify him that his signal had been observed and the car would stop. Thus assured, and misled into expecting that it would stop, he stood near the edge of the platform close to the track and was injured by the car which did not even slacken its speed and went by the crossing at a rate of 50 or 60 miles an hour. Holding that if the car was signaled and answered as claimed plaintiff was thereafter entitled to the degree of care on defendant's part owed to a passenger, the court said in discussing the question:

"The cases cited by defendant's counsel (*Georgia, etc., R. Co.* v. *Tapley*, 144 Ga. 453 [87 S. E. 473, L. R. A. 1916C, 1020]), are easily distinguishable. In these cases there was no acceptance, express or implied, of plaintiff as a passenger. To complete the relation, there must be an intent on the part of the passenger to take passage; a communication of such intent to the carrier, and an express or implied acceptance by the latter. *Brott* v. *Railroad Co.*, 220 N. Y. 92 (115 N. E. 273)."

The trial court rightly held, as an unavoidable conclusion of law under the undisputed facts, that plaintiff failed to make out a *prima facie* case of actionable

negligence on the part of defendant and the unfortunate accident was primarily imputable to the negligence of plaintiff's intestate.

The judgment is affirmed.

Moore, Fellows, Stone, Clark, Bird, and Sharpe, JJ., concurred.

The late Justice Brooke took no part in this decision.