26733. MAYOR & COUNCIL OF BUFORD *v.* MEDLEY.

DECIDED APRIL 22, 1938. REHEARING DENIED JUNE 9, 1938.

W. L. Nix, A. G. Liles, for plaintiff in error.
Marvin A. Allison, Pemberton Cooley, contra.

SUTTON, J. The uncontradicted evidence showed that there existed, at a point where the State cement-paved highway joined with the asphalt-paved street through the City of Buford, about two hundred yards within the city limits, a hole or defect variously estimated to be from two to three inches deep and from eighteen to twenty-four inches square; that the husband of the plaintiff was in a car being driven by their son, and that as the automobile approached the hole or defect it was traveling at a speed of from thirty to forty miles an hour; that the morning was misty and the roads wet and slippery from rain; that the automobile, after one of its wheels had traversed the hole or defect ran against an embankment, turned upon its side, and that in some way the husband of the plaintiff was thrown from the car and was killed almost instantly. It was also uncontradicted that at the time there was in effect an ordinance of the City of Buford, a copy being introduced in evidence, limiting the speed of automobiles within the city limits to fifteen miles an hour. It was shown that the husband was in good health at the time of the accident, was fifty-seven years of age, and had an annual income of from $2500 to $3000. There was testimony that near the hole or defect was a sign warning that the asphalt pavement was slippery when wet, and that the sign could ordinarily be seen at a distance of one hundred yards in approaching the hole or depression. The driver of the car testified that there was no such sign at the time of the accident, and that he was looking straight ahead down the highway. A number of witnesses testified that the asphalt pavement when wet could be safely traveled by automobile at fifteen miles an hour. The evidence was conflicting as to whether or not an automobile might safely travel over it at thirty to forty miles an hour. At such speed it would be dangerous, according to their testimony, to apply the brakes. Two or three witnesses testified that shortly after the accident they saw skid marks on the pavement along the route which the car traveled after leaving the hole or depression. The driver of the car testified that he knew that some asphalt pavements are slippery when wet, but he denied that he applied the brakes, testifying that one of the wheels of the automobile dropped in the hole or depression, which he stated he was unable to see as he approached the asphalt pavement; that the car was thereby made to swerve and skid, and he was unable to con-

trol it; and that he was a stranger to the roads and had no warning of the defective condition that existed. One witness testified that he talked with the driver shortly after the accident and was told by him: "I was driving pretty fast, and when I ran onto that pavement my tires were slick, and when I put on my brakes the car went to skidding, and I never could get my car under control, and I ran over the bank and killed my father." The driver testified, as to that conversation, that he could not identify the witness, but remembered having a conversation with a member of the police force after the accident, and presumed it was the witness; but that his recollection of what was said was that he told him that, with the street being wet and slippery, when he hit the rough spot it upset him and he never could get control of the car. Another witness testified that the tires on the wheels of the automobile were badly worn, and that one was flat when he inspected the automobile shortly after the accident. There was evidence that the hole or depression had existed for some weeks before the accident, and was known to the municipal authorities; although their testimony was that they had not regarded the defect as dangerous, and it had not been reported to them as dangerous for the usual and ordinary travel, and that hundreds of cars had daily passed along the road.

■ The law in respect to the issue here raised was stated in *City of Rome* v. *Brinkley*, 54 *Ga. App.* 391, 392 (187 S. E. 911), where the plaintiff sought recovery because of damages sustained by reason of a defect in a city sidewalk: "While municipal corporations are not liable for failure to perform, or for errors in performing, their legislative or judicial powers, they are liable 'for neglect to perform or for improper or unskilful performance of their ministerial duties.' Code, § 69-301. 'If a municipal corporation has not been negligent in constructing or repairing the same, it is not liable for injuries resulting from defects in its streets when it has no actual notice thereof, or such defect has [not] existed for a sufficient length of time for notice to be inferred.' § 69-303. . . The general rule of law is that a municipal corporation is bound to keep its streets and sidewalks in a reasonably safe condition for travel in the ordinary modes by night as well as by day; and if it fails to do so, it is liable in damages for injuries sustained in consequence. [Citing many cases.] And where the city knows or ought to know of a defect

in time to repair or give warning of it, it is liable for injuries sustained because of the defect, regardless of its cause. *McFarland* v. *McCaysville*, 39 *Ga. App.* 739 (148 S. E. 421), and citations, supra. The city will be liable, no matter by what cause the sidewalk may have become defective and unsafe, where it knew or should have known of the defect in time to have repaired it. *City of Atlanta* v. *Robertson* [36 *Ga. App.* 66 (135 S. E. 445)]. And what would be 'in time' is ordinarily a question for the jury under the facts. If a city has notice of a dangerous defect in a sidewalk, it is its duty to exercise ordinary care in remedying the same or in placing a safeguard about it. *City of East Point* v. *Christian*, 40 *Ga. App.* 633, 638 (151 S. E. 42), et seq. If such defect has existed in the sidewalk for such length of time that by reasonable diligence in performance of their duties the defect ought to have been known by the proper municipal authorities, notice will be presumed, and proof of actual knowledge will not be necessary in order to render the city liable for injuries occasioned thereby. *Braddy* v. *Dublin*, 41 *Ga. App.* 603 (154 S. E. 204); *City of Waycross* v. *Howard* [42 *Ga. App.* 635 (157 S. E. 247).]" It was also said in that case that whether the defect was of a dangerous nature would be a question for the jury, and that "Whether a particular defect or obstruction in a sidewalk was such as to give a right of action to a person injured thereby is ordinarily a jury question, since it is a complicated question of fact, involving the height of the obstruction, its appearance to pedestrians, and the peril which might have been anticipated by the municipal authorities in the exercise of reasonable forethought."

Was the hole or defect such as to be dangerous to persons using the street in the usual and ordinary mode of travel? Was the death of the plaintiff's husband due solely to the negligence of the City of Buford, or to the negligence of the driver of the car, or were the city and the driver both negligent; and if the latter be true, was the negligence of the driver less than that of the City of Buford? Under the evidence we think that these questions were all for the determination of the jury. By the amount awarded in the verdict it was evidently the conclusion of the jury that each was negligent, but that the negligence of the driver was less than that of the city. They were authorized to so find under the comparative-negligence rule given in charge by the court. Undoubt-

edly the car was traveling on the city street in violation of a valid city ordinance limiting the speed to fifteen miles per hour. The driver admitted that on the cement State highway he was traveling at from thirty to forty miles an hour; and as the hole or defect into which he claimed the wheel of the car dropped was almost in immediate proximity with the place where the State highway and the city street joined just within the city limits, it is a reasonable inference that when the car entered upon the asphalt pavement the speed had not been, and could not have been, reduced to a rate as low as fifteen miles per hour. But while the violation of a municipal ordinance is negligence per se, such infraction would not necessarily bar the right of recovery. The act must be such as to constitute the proximate cause of the injury. It can not be said as a matter of law that even at the rate of speed the car was traveling on the asphalt pavement the driver, except for the intervention or interruption which had been occasioned by the hole or defect, would not have been able to so drive the car as to prevent injury to either occupant. Assuming that the asphalt pavement was properly constructed from the standpoint of engineering and material and the ordinary mode of travel through a municipality, it might nevertheless be found by the jury that such intervention by the hole or defect, causing the car to swerve and skid, was the cause of the driver being unable to steer the car safely along the asphalt pavement. In other words, while the wet asphalt pavement, as it existed except as to the hole or defect, was such that one violating the city ordinance might possibly travel with safety at thirty to forty miles an hour thereon, yet it constituted, as to a car out of control by reason of the adverse influence exerted by the hole or defect, a place of danger. The wrong of the city, if a dangerous hole or defect existed, would be, not that it constructed and maintained an asphalt pavement which could become wet and slippery, but that it permitted such dangerous hole or defect to exist in the asphalt pavement where it joined the cement highway, with the result that the driver of the car was prevented, after the wheel had dropped into the hole or defect and the car was made to swerve and skid, from continuing with safety, as otherwise he might possibly have done, along such wet asphalt pavement. Under the law and the evidence the jury was authorized to return a verdict in favor of the plaintiff.

■ Two grounds of the motion for new trial complain of the admission, over objection, of the testimony of the wife and the son of the deceased, as to his earnings, it being contended that the evidence showed that the deceased kept books of account, and that such records were the best evidence. The testimony did not purport to show what the books contained, but the facts testified to were within the witness' own knowledge. "As a general rule, the testimony of a person who has knowledge of the facts from which books of account are made up is as to those facts primary evidence, and is admissible, whether or not the books themselves are put in evidence." *Booth* v. *Schmoller & Mueller Piano Co.*, 32 *Ga. App.* 35 (3) (122 S. E. 636); *Villa Rica Manufacturing Co.* v. *General American Life Ins. Co.*, 55 *Ga. App.* 328 (190 S. E. 49).

■ The amendment offered by the plaintiff at the conclusion of the evidence was properly allowed by the court, and was not subject to the objection that (a) it was irrelevant and immaterial; (b) it attempted to set up or set up a new cause of action; and (c) the allegations set forth no facts constituting negligence on the part of the defendant, and the facts alleged, if true, would not furnish any ground for recovery. The amendment set forth the fact that the asphalt-paved city street was in such condition that when wet by rain or otherwise it became slippery and dangerous for automobile travel; that on the morning of, or at the time of, the accident the street was wet and slippery; that the defendant knew of the dangerous condition, and was negligent in permitting said street to remain in said dangerous condition, so as to imperil the safety of the public along the street and particularly those traveling by automobile. The allegations as to the asphalt pavement being wet and slippery were not irrelevant and immaterial to the cause of action. As shown in the first division of this opinion, the wet and slippery condition was material and relevant, not as showing any negligence on the part of the defendant in maintaining such a street in a municipality for the usual and ordinary travel therein, but as illustrating the difficulty into which the driver of the car and the deceased were placed by reason of the hole or defect causing the automobile to swerve and skid in its progress on such street. While the allegation that the defendant was negligent in permitting the street to remain "in such dangerous condition" was not well founded, because the defendant can

not be negligent in maintaining a wet and slippery asphalt-paved street which, under the evidence, was safe for automobile travel at the rate of speed authorized by the city ordinance, the objection was not to that allegation alone but to the entire amendment, which also contained allegations appropriate to the cause of action, namely, the allegations as to the wet and slippery condition of the street. Nor did the amendment set forth or attempt to set forth a new cause of action. The wrong complained of in the original petition was the failure of the defendant to refrain from injuring the plaintiff's husband while he was being transported in an automobile on the city street. That wrong was properly shown, not only by the allegations as to the hole or defect, but also by the allegations as to the wet and slippery condition of the street upon which the car had to travel after being made to swerve and skid by the hole or defect. "A single wrong may be composed of numerous elements and shown by various facts." *Ellison* v. *Georgia Railroad Co.,* 87 *Ga.* 691, 710 (13 S. E. 809); *City of Columbus* v. *Anglin,* 120 *Ga.* 785, 792 (48 S. E. 318); *Chestnut* v. *Weekes,* 180 *Ga.* 701 (180 S. E. 716). It is true, as contended by the plaintiff in error, that the facts alleged in the amendment do not of themselves furnish any ground for recovery, but they illustrate, as shown above, how the deceased met his death after the car wheel had dropped into the hole or defect and the automobile was thereby made to swerve and skid. The court did not err in allowing the amendment.

■ The failure of the court to grant a continuance, to enable the defendant to prove by expert witnesses that the asphalt pavement was of the usual and ordinary construction and entirely safe for the public to travel thereon in automobiles in the usual and ordinary method, was, if error, harmless. Even conceding that the defendant would be able to prove its contentions, the fact remains, as a matter of common knowledge, that an automobile proceeding along such a street, after impact with a hole or defect under the conditions hereinbefore shown, might continue to swerve and skid, although the street be admittedly safe for travel in the usual and ordinary mode. While the defendant could not be said to be negligent in respect to such particular construction, it would, if negligent in maintaining a dangerous hole or defect where the asphalt pavement joined the cement State highway, be responsible

for any injury sustained by an occupant of the automobile by reason of the hole or defect causing the car to get beyond the control of the driver and to swerve and skid along the asphalt paved street which might not be negligently constructed but which was reasonably safe for automobile travel in the usual and ordinary mode.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*