32656. McKAY· *v.* CITY OF ATLANTA *et al.*

798

· ·Decided January 6, 1950. Rehearing denied February 2, 1950.

*Smith, Kilpatrick, Cody, Rogers & McClatchey, A. G. Cleveland Jr.,* for plaintiff.

*J. C. Savage, J. C. Murphy, J. M. B. Bloodworth, J. E. Feagin, MacDougald, Troutman, Sams & Branch, William H. Schroder,* for defendants.

Sutton, C. J.   Miss Jessie McKay filed an action in Fulton Superior Court in February, 1949, against the City of Atlanta and the Georgia Power Company, seeking damages for injuries allegedly sustained when she stepped in a hole in the street while attempting to board a trackless trolley.   According to the allegations of the petition a trackless trolley operated by the power company, headed in a southwesterly direction, was stopped about

15 feet from the curb at the northwest corner of Broad and Marietta Streets on January 31, 1948, at approximately 4:50 p. m., and the plaintiff, in an effort to board it, fell when she stepped from the curb to the street, where her shoe caught in a hole or depression about 1 inch deep, 2 to 3 inches wide, and 15 inches long, which was covered and obscured by water as the result of several hours of rain. The petition contains a description of her injuries, a statement of medical expenses, and shows that the defects in the street had existed for more than 30 days prior to the time of her alleged injuries, and that she notified the city of her claim in March, 1948. Concurrent negligence on the part of the city and the power company is alleged as the proximate cause of her injuries.

Negligence on the part of the city is alleged: "(a) In allowing defendant Georgia Power Company to operate over Broad Street very heavy vehicles under a plan which necessitated constant stopping and starting of such vehicles at a point where said street was constructed of asphalt without a sufficiently strong base to accommodate such vehicles under such conditions without causing holes and cracks to appear therein. (b) In allowing the aforesaid holes or depressions to remain in the surface of Broad Street after defendant knew or should have known of their presence. (c) In failing and neglecting to repair or barricade said street after defendant knew or should have known of such holes or depressions."

It was alleged that the power company was negligent: "(a) In causing the aforesaid holes or depressions to appear in the surface of said street by driving very heavy vehicles over said street and stopping and starting said vehicles at a point on said street knowing that at such point said street was constructed of asphalt without a sufficiently strong base to accommodate such operation without causing cracks and holes to appear in said street. (b) In stopping said trackless trolley at a distance of fifteen (15) feet from the curb on Broad Street at a point where its driver knew or should have known that passengers undertaking to board would be put in a position of danger in crossing the street from the curb to the trolley, and also in stopping said trackless trolley at such distance from the curb when the driver either knew of the existence

of such holes or depressions in the street, or by the exercise of proper care and examination should have known before he stopped said trolley of the presence of such holes or depressions in the street. (c) In failing to stop near the right side of the street when taking on and letting off passengers, in violation of § 62-215 of the City Code of Atlanta which Code Section reads as follows, and which action constituted negligence per se: '(1712) *Busses not to use streets as stands: stopping regulated.* No motor bus shall use any portion of the streets as a stand or place of business. They may stop upon any of the streets or public places, but only at intersections, on the near and right side of the street on which they are being operated, for the purpose of receiving and discharging passengers: Provided, that no more time is consumed in such stops than is necessary for this purpose; and provided, further that they shall so stand at such stops as not to interfere with pedestrians crossing the street or with passengers boarding or alighting from street cars."

Both defendants filed general demurrers to the petition, and in addition the defendant power company demurred specially, and moved to strike, among other things, all of the allegations of negligence of the power company. The trial judge sustained the general demurrers, as well as the special demurrers of the power company directed to the allegations of negligence of the power company, and dismissed the action, to which judgment the plaintiff excepted.

█ "Municipal corporations shall not be liable for failure to perform, or for errors in performing, their legislative or judicial powers. For neglect to perform, or for improper or unskillful performance of their ministerial duties, they shall be liable." Code, § 69-301. A municipal corporation must keep its streets and sidewalks in a reasonably safe condition for travel in the ordinary modes at all times, both day and night, and is liable in damages for injuries sustained by its failure to do so, and this is true regardless of the cause of the defect, if the city knew or should have known of the defect in time to repair it or give warning of its existence, and this notice may be presumed if the defect has existed for such length of time that by reasonable diligence in the performance of their duties the proper municipal authorities could have discovered the defect, and in such event

proof of actual notice is unnecessary. Whether by the existence of a defect in a street or sidewalk such street or sidewalk was not in a reasonably safe condition, and whether the city knew or ought to have known of the defect in time to repair it, or give warning of its existence, are ordinarily questions for determination by a jury. The above principles are well settled in this State. See *Mayor & Council of Buford* v. *Medley*, 58 *Ga. App.* 48, 52 (197 S. E. 494), and citations. Also, see Code, § 69-303, and compare § 898, Civil Code of 1910.

■ Without question, the defects in the street in this case were minor in nature, and from the allegations of the petition it appears that the particular defect in question was not more than 1 inch deep, 2 to 3 inches wide, and 15 inches long. If this were a case of first impression this court would probably be inclined to hold as a matter of law that under the circumstances here shown the street was in a reasonably safe condition for travel by the ordinary modes, including its use at the time by the plaintiff, and such a holding would be in line with the general rule prevailing in many other jurisdictions in regard to minor street and sidewalk defects. However, this court must give effect to stare decisis, as did the Supreme Court in *City of Brunswick* v. *Glogauer*, 158 *Ga.* 792 (124 S. E. 787); and although numerous cases from other jurisdictions were cited in that opinion, the holdings in those cases being that as a matter of law a minor defect in a street or sidewalk did not give a cause of action to the injured party, the court in that case carefully pointed out that the established rule in Georgia was that even as to minor defects, the question should be submitted to a jury. In the *Glogauer* case the Supreme Court was reviewing, among other things, a ruling of the Court of Appeals, 30 *Ga. App.* 727 (119 S. E. 420), as follows: "While a municipal corporation may not fail in its duty to keep its sidewalks in repair by merely permitting them to exist with certain irregularities upon the surface of the pavement, yet where there is a defect, such as appears from the evidence in the case under consideration, which consists of a raised and irregular surface upon the sidewalk, caused by the root of an adjacent tree growing under the sidewalk and disarranging the tiles and causing one of them to project above

the level of the sidewalk, which condition has been allowed to remain for a period of years, it is a question of fact for the jury as to whether or not the city in maintaining the sidewalk in such condition was negligent." The Supreme Court upheld this ruling, and in so doing relied upon the rulings in *City of Atlanta* v. *Bellamy*, 72 *Ga.* 420, *City of Atlanta* v. *Brown*, 73 *Ga.* 630, and *Dempsey* v. *Rome*, 94 *Ga.* 420 (20 S. E. 335). The defect in the sidewalk in the *Bellamy* case was a hole shown by the evidence to be about the size of a common brick, and after a verdict for the defendant the trial judge granted the plaintiff's motion for a new trial, to which ruling the defendant excepted. Although the Supreme Court pointed out that this grant of a new trial was hardly warranted by the record, it refused to interfere with the exercise of a discretion by the trial judge, and in the opinion, quoting in part from *Rivers* v. *Augusta*, 65 *Ga.* 378 (38 Am. R. 787), said: " 'Calamities and casualties are common to all, but because they occur, it by no means follows that such as may be so unfortunate are entitled to recover compensation in damages out of some person, either natural or artificial, who may be able to respond, notwithstanding it appears that such impressions are beginning largely to prevail.' We cannot entertain the idea that 'municipal corporations are insurers against accidents upon streets and sidewalks, or that every defect therein, though it may cause the injury sued for, is actionable. It is sufficient if the streets (which include sidewalks and bridges thereon) are in a reasonably safe condition for travel in the ordinary mode, by night as well as by day.' To require higher care and diligence, at the hands of the public authorities, would exceed the resources at their command, and would entail upon the community an unsupportable burden. It is impossible to ascertain speedily when the bricks, paving, and flag stones on the streets are out of place, and to keep promptly in repair at all times trifling defects resulting from such causes. In all suits for damages resulting from such causes, these considerations should have weight with juries, whose peculiar province it is to pass upon questions of negligence, under directions from the court." In the *Brown* case the defect was a rough sidewalk, and the trial judge overruled the defendant's motion for a new trial after a verdict for the plaintiff, although

in so doing stated, "That, in his judgment, the alleged injury was, or should not be an actionable defect .. . but as he had fully and fairly charged the jury as to the defect being actionable, and they having found in favor of the plaintiff, . . he felt that he should not disturb their verdict." Again the Supreme Court refused to interfere with the discretion of the trial judge. In the *Dempsey* case the defect was a hole about 10 or 15 inches long, 3 inches wide, and 2 or 3 inches deep, in a plank crossing, and the Supreme Court held it was error to grant a nonsuit. In relying upon the above cases as a basis for sustaining the ruling of the Court of Appeals in this respect in the *Glogauer* case, the late Mr. Justice Atkinson, speaking for the Supreme Court, said: "Those decisions hold in effect that the minor defects under consideration were sufficient upon which to submit to the jury the question of negligence of the city in allowing the sidewalk to remain in such condition, and to support a finding for the plaintiffs. Each of them was rendered by all the justices of the court as it was then constituted; and never having been overruled, they are binding as precedents. While the defect involved in the present case is somewhat different from those involved in the cases mentioned above, they are all minor defects so nearly similar that the cases cannot be distinguished upon principle. Accordingly the court is constrained to hold that the existence of the defect in the present case for the length of time and under the circumstances as disclosed by the evidence was sufficient to carry the case to the jury on the question of the defendant's negligence." Since the *Glogauer* case there have been several decisions by the Court of Appeals holding that the facts in such cases similar in principle to the case just referred to presented a jury question. In *Coker* v. *Rome*, 53 *Ga. App.* 533 (186 S. E. 585), the defect in the sidewalk was a triangular hole 6 inches wide and 2 or 3 inches deep, and it was held that the trial judge erred in sustaining the demurrer. In *City of Rome* v. *Brinkley*, 54 *Ga. App.* 391 (187 S. E. 911), it appears that a portion of the sidewalk was about 6 inches above the level of the adjoining portion, and it was held that the trial judge did not err in overruling the demurrer. In the opinion (p. 393) it was said: "Whether the difference of approximately six inches of the sidewalk, as described in the plaintiff's petition, would be a normal

irregularity or defect, or whether it was of a dangerous character, would be for the jury under the facts in the case. Of course, where the defect in a sidewalk is so slight that the minds of reasonable men would not differ in the conclusion that it was not dangerous for walking by persons using due care, a cause of action against the city would not be alleged. Whether a particular defect or obstruction in a sidewalk was such as to give a right of action to a person injured thereby is ordinarily a jury question, since it is a complicated question of fact, involving the height of the obstruction, its appearance to pedestrians, and the peril which might have been anticipated by the municipal authorities in the exercise of reasonable forethought." In *Mayor & Council of Buford* v. *Medley,* supra, the defect in the street was 3 inches deep and 18 to 24 inches square, and it was held that under the law applicable thereto and the evidence a verdict for the plaintiff was authorized. According to the petition in *City of Rome* v. *Richardson,* 62 *Ga. App.* 85 (7 S. E. 2d, 927), although not shown in the opinion, the hole in the sidewalk was 11 inches long, 5½ inches wide, and 1½ inches deep, and it was held that this minor defect was not of such nature as to require a holding as a matter of law on demurrer that the defendant city was not negligent in the performance of its legal duty to keep its public streets and sidewalks in a reasonably safe condition. Also, see *Belcher* v. *Atlanta,* 71 *Ga. App.* 595 (31 S. E. 2d, 612). However, in *Emory* v. *Rome,* 54 *Ga. App.* 469 (188 S. E. 358), where the alleged defect was a piece of cement approximately 5 x 10 inches projecting about 3 inches above the surface on a grass parkway adjacent to the sidewalk, presumably where no one was expected to walk, it was held that the petition was properly dismissed on demurrer. Obviously, the factual situation in that case is different from the other cases already cited. It appears that the established rule in this State is that, where it is shown that a defect exists in a street or sidewalk, although the defect is minor in nature, the question of whether the street or sidewalk was in a reasonably safe condition for use by the ordinary modes of travel should be determined by a jury, and not as a matter of law. The present case is not distinguishable in principle from those cases wherein the jury has been permitted to

pass upon the question, and under the alleged facts whether the street was in a reasonably safe condition was a jury question.

■ Was the defendant power company as a carrier under a duty to exercise extraordinary care toward the plaintiff, or had the plaintiff assumed the status of a passenger at the time of the alleged injury? It was alleged that she was on the sidewalk at a designated stop waiting for a trackless trolley, and that the driver of the trolley stopped the car 15 feet away from the curb, and opened the door for the purpose of discharging and receiving passengers, and that the plaintiff stumbled and fell somewhere between the curb and the trolley, on account of the condition of the street, while moving toward the trolley for the purpose of boarding the same. The designated waiting place was on a public sidewalk, and the trolley was stopped in a public street. This presents a different situation from that wherein the carrier provides a waiting place for passengers on its own premises, and this difference was recognized in *Georgia & Florida R. Co.* v. *Tapley,* 144 *Ga.* 453, 456 (87 S. E. 473), where the court said: "The street railway and omnibus cases are not in all respects analogous to those involving an effort to take passage on a steam-railway train at a flag-station. One difference which will be readily perceived arises from the fact that street cars and omnibuses travel along highways which they do not own and over which other vehicles and pedestrians pass, while steam railways use a right of way along a fixed road-bed, and in many places have waiting rooms at fixed places for the reception of passengers. Also street cars and omnibuses usually stop either whenever signaled, or at certain short intervals upon signals, and passengers generally enter these conveyances in the public streets or at street crossings." Neither the *Tapley* case, nor *Western & Atlantic R. Co.* v. *Voils,* 98 *Ga.* 446 (26 S. E. 483), nor *Atlanta Northern Ry. Co.* v. *Brown,* 159 *Ga.* 212 (125 S. E. 465), cited by the plaintiff, is authority for the proposition that the plaintiff was a passenger to whom the carrier owed a duty of extraordinary care at the time she received her injuries. In Duchemin *v.* Boston Elevated Ry. Co., 186 Mass. 353 (71 N. E. 780, 66 L.R.A. 980, 104 Am. St. R. 580, 1 Ann. Cas. 603, 17 Am. Neg. R. 61), the court held: "A foot traveller on a highway who is approaching and intending to board a street car,

which in response to a signal from him has stopped to receive him, is not a passenger on the car before he reaches it, and until he begins to enter the car the company operating it owes him only the duty which it owes to all persons lawfully upon the street." For annotations on the question, citing other rulings to the same effect, see 75 A.L.R. 285 and 7 A.L.R. 2d, 549. Under the alleged facts in the present case the plaintiff, at the time she received her injuries, had not yet assumed the status of a passenger on the trackless trolley, and the carrier owed to her only the same duty of ordinary care owed to any pedestrian upon the street at the time and place in question.

■ Does the petition show any violation of any duty on the part of the defendant power company in the operation of its vehicles upon the street from which a jury could determine that the power company was guilty of ordinary negligence or a failure to exercise ordinary care which was the proximate cause of the plaintiff's injuries? The petition clearly indicates that except for the alleged defective condition of the street the plaintiff would not have received her described injuries. Even if the operation of vehicles on the street by the defendant power company caused the holes or depressions, it is alleged that this operation was under authority from the city, and there is nothing indicating that the power company was under any duty of repairing the streets where its vehicles caused the holes or depressions, or that the power company was under any duty of preventing a pedestrian from using that part of the street where holes or depressions existed. It does not appear that the plaintiff in this case was required to use that part of the street which might be unsafe on account of the holes or depressions, in moving from the sidewalk to the waiting trolley. The petition does not show that the holes or depressions were necessarily in the path from the designated stop to the waiting trolley. Assuming, without deciding, that there was a violation of the city ordinance, in that the trolley was stopped 15 feet from the curb, and not on the near or right side of the street, and that the ordinance applies to trackless trolleys and includes within its scope the safety of pedestrians, the ordinance does not require a trolley to stop against the curb, and persons intending to become passengers on a trolley might still have to step from the curb to

807

the street and walk on a part of the street before boarding the trolley. According to the petition the plaintiff stepped in the hole or depression on her first step from the sidewalk onto the street. Besides, it would seem, as ruled by the trial judge, that the purpose of the ordinance was to regulate traffic, and not for the benefit of the plaintiff and others undertaking to board a trolley. While questions of negligence and proximate cause are ordinarily for a jury, it is the duty of the court to decide such questions in plain and undisputable cases, and in so doing the petition will be construed most strongly against the pleader. We are of the opinion that the petition in this case fails to show a violation of any duty of ordinary care on the part of the defendant power company to the plaintiff, either as a matter of fact or in the alleged violation of the city ordinance, which could be said to be the proximate cause of the injuries received by the plaintiff. For authorities from other jurisdictions to the effect that a street car company is under no liability for injuries received on account of the condition of a street see the annotations cited in the preceding division of this opinion.

The trial judge erred in sustaining the general demurrer of the City of Atlanta, but did not err in sustaining the demurrers of the defendant Georgia Power Company, and in dismissing the petition as to this defendant.

*Judgment affirmed in part and reversed in part. Felton and Worrill, JJ., concur.*