## CITY OF BRUNSWICK *v.* GLOGAUER.

1. Where a sidewalk extending along a street in a city is paved with tiles, and a root of a nearby tree extends under, and by its natural growth disarranges the tiles so as to produce a raised and irregular surface across the sidewalk and to cause one of the tiles to project about two inches above the surface of the sidewalk, and the sidewalk is allowed by the city to remain in such condition for a number of years, and a pedestrian using the sidewalk stumbles over the projecting tile and as a result falls and sustains an injury; under former decisions of this court it is a question for the jury to decide whether the city was negligent in allowing the sidewalk to remain in such condition.

2, 3. The evidence in this case was insufficient to show that the defect referred to in the preceding note was to some extent obscured by a shadow.

4. It has been uniformly held that "Where in a civil case the judge, in stating the contentions of the parties, fully and fairly submitted the issues raised by the pleadings in the case, the failure of the court, in the absence of a request, to instruct the jury upon a contention of one of the parties not raised by the pleadings, although supported by some evidence in the record, is not cause for a new trial." Where under application of this rule the Court of Appeals would not have been required to reverse the judgment of the trial court for alleged errors in omission to charge without request, this court will not reverse the judgment of the Court of Appeals on account of its rulings on such assignments of error, whether or not the decision of the Court of Appeals was erroneous.

5. Under the facts of this case, evidence in behalf of the city, to the effect that many other people had safely passed over the same sidewalk when in the same condition as when the plaintiff was injured, and that no claims for injuries to persons by reason of other sidewalks shown to have similar defects had been filed against the city prior to plaintiff's injuries, was relevant.

6. The Court of Appeals did not err in the ruling complained of and dealt with in the sixth division of the opinion.

7. No ruling will be made as to the sufficiency of the evidence to support the verdict.

No. 4003.   September 20, 1924.

Certiorari; from Court of Appeals.   30 *Ga. App.* 727.

On November 30, 1920, Mrs. Hannah Glogauer instituted an action for damages against the Mayor and Council of the City of Brunswick, based on alleged personal injuries resulting from

negligence in the maintenance of a sidewalk. On May 26, 1921, the petition was amended by alleging, among other things, that since the filing of the original petition the name of the defendant was changed by act of the legislature to "The City of Brunswick." The petition alleged substantially the following: At a point on the western side of Norwich street about 100 to 125 feet north of I street, a root of a tree growing at the edge of the sidewalk extended under the sidewalk, and the growth of the root in time caused one of the tilings about the middle of the sidewalk to "tilt up" and be out of position to the height of about three inches above the level of the sidewalk. Opposite this point bricks were piled extending along the eastern side of the sidewalk, covering a width of three or four feet "from the eastern edge of said sidewalk and on said sidewalk," which had the effect of causing the defective tile to be so obscured that it was not readily detectable by a pedestrian on the sidewalk. While the sidewalk was in the condition above described and after it had been in such condition for two or three months, the petitioner, on December 29, 1919, was walking from her place of employment out to her home about one fourth of a mile beyond the point above mentioned. She was walking along the middle of the sidewalk, believing that it was safe for her to use, when her foot struck against the defective tile. The impact had the effect of throwing petitioner out of balance and causing her to fall to the pavement. In the act of falling, in an effort to protect herself she involuntarily grasped the edge of the pile of brick, which, being insecurely piled and top-heavy, "toppled over" and fell upon her. She suffered a severe injury to her hip, permanent in character, which caused pain and suffering and total loss of earning capacity. She was 59 years of age, with a life-expectancy of fourteen and nine tenths years, and she had an earning capacity of $75 per month. The grounds of negligence alleged were (a) Permitting the sidewalk to remain in such defective condition. (b) Failure to repair the sidewalk after notice of the fact. (c) Allowing the brick to be insecurely stacked along the outer portion of the sidewalk. The answer of the defendant admitted some of the paragraphs of the petition, and denied others. Those that were denied embraced what is stated above. The petition did not show that at the time or after the injury the petitioner had a living husband; nor did the answer set up such fact, or con-

tend that the plaintiff was not entitled to recover for her earnings on the ground that the right of action for such, if any, was in the husband.

On the trial there was proof of a severe injury, and that it was caused by stumbling over the tile and falling on the pavement of the sidewalk as alleged. Something more than a year after the injury the plaintiff caused to be made two photographs of the place, and introduced them in evidence. All of the witnesses who testified to having seen the place on the day of the injury, and concerning the pictures, testified that the photographs gave a correct view of the scene as they saw it. One of the pictures showed a view of the sidewalk looking from south to north, and the other showed the view from the opposite direction. The pictures showed certain houses west of and fronting on the sidewalk and a line of open upright board-fencing along the western edge of the sidewalk in front of the houses, and that no trees were on the west side of the sidewalk. The tree on the east side of the sidewalk appeared in the pictures, the root of which was said to have produced the break in the surface of the sidewalk. The line of piled bricks had been removed to be used in paving the street, and consequently did not appear in the pictures. The pictures showed that the walk was paved with six-sided tiling and that along the east edge of the sidewalk was an unpaved space about one half the width of the sidewalk. The tree was shown standing at the middle of this space. The root did not appear in the picture, but an irregular break in the surface almost opposite the tree appeared to extend across the sidewalk. Some four or five feet south of this break other tiles appeared to be out of position. In the middle of the sidewalk and included in the break first mentioned was a tile which was identified by the plaintiff as the one that caused her to fall. That tile was unbroken and in place, except that the northeast edge was slightly lower and the southwest edge was apparently the thickness of the tile higher than the tile next south of it. It did not appear that there was an open space under the tile into which the plaintiff's toes could have gone. The only witness who testified to the thickness of the tile stated that he measured it, and that it was one and three fourths inches thick.

The plaintiff as a witness in her own behalf gave a narrative which, in so far as it relates to her familiarity with the place and

her conduct and the cause of her injury, follows: She was a clerk in a store, and had lived in the southern part of the city for many years, but only five months before had moved to a residence on Norwich street at the intersection of L street on the north side of the city. She usually used the street-car in going to and from the place of work in the city, had walked only once or twice, and knew very little about the condition of the sidewalk. Her usual lunch hour was from eleven to twelve o'clock. On December 29, she was detained at the store where she was employed, so that she did not leave for lunch until about 12 o'clock. The street-cars were running late, and she had missed one; so to avoid losing time from her business she started walking home to lunch. The route was along Gloucester street to the intersection of Norwich street, thence north along that street to the place where she intended to go. On reaching Norwich street she noticed that there were some bricks that were being used for paving, but looking up the street everything "looked favorable, . . no sign of danger," and she proceeded on the route. After passing the intersection of I street and before reaching the intersection of J street, while walking north along the west sidewalk of Norwich street in her usual gait, and "looking for no danger," her "right toe stumbled. It got caught under some broken tile, and I went backward. My big toe stumbled. My right foot was caught, and I tried to steady myself and fell on the sidewalk; [it] threw me out of balance in trying to steady myself. There was no way to reach the ground. There was some bricks stacked. . . I thought I could save myself, and in touching the brick I was thrown flat into the sidewalk. After I was down on the sidewalk several of these brick toppled over and struck me. . . I had no knowledge about the broken sidewalk at all. . . Those bricks being piled up there had the effect of casting a shadow on the sidewalk. . . I was not anticipating any bad place on Norwich street before I got to this place. . . When I approached there I was alone. . . These photographs are true and correct photographs of the place and injury. That is it [indicating], the tile that I stumbled over and fell. That is looking towards L street. This other photograph is looking towards Gloucester street. I saw a tree; that is the place I fell. There was a house back there where those two colored people live. Their names are Eli Monroe, but I have never known the woman's

name. . . This tree root raised the tile over at the fence. I noticed those places [indicating on the photograph]. But this is the broken place. I identify these as being correct photographs. . . This sidewalk is a paved sidewalk. That is a correct photograph. I recognized it the moment I saw it, . . because it bulged up so. Those bricks I saw there were laid across, but you could not see a thing. With the sun shining in your face you could not have seen a shadow. These brick . . stacked . . reached almost to my waist line. There were other stacks. . . This whole line of brick stacked there was up to my waist line. . . There is what you call a grass plat, but here they were stacked on the sidewalk. Generally they were stacked on the improved part of the sidewalk. Right here they were not. . . No bricks were lying on the ground. . . This was a bright sunshiny day. . . · The bricks that I grappled when I fell did not fracture my thigh, the sidewalk is what fractured my spine." The witness stated specifically that it was "12 o'clock noon on Monday, December 29th, 1919," when she suffered the injury. She also testified, that when she revisited the scene about eight months after the injury, she saw "there was plenty such places on the sidewalk," and she understands that "it is common all over the city to see these misplaced tiling;" that she had walked on the sidewalks of the city for as long as thirty-seven years, and had never before received an accident; that she had an earning capacity of $75 per month, and earned at least that amount; that she was married at the time of the injury, and continued to live with her husband until his death, which occurred during the week immediately preceding the trial, about two and one half years after receiving the injury; that during that time her husband was an invalid and dependent on plaintiff for a support; and that she was 59 years of age and in good health at the time of the injury.

Al Womack, witness for plaintiff, testified, that he was driving south along the street, and saw Mrs. Glogauer near the tree, down on the sidewalk, and went to her assistance; he had to jump over the pile of brick that was stacked along there; there were some loose brick that had fallen off the pile; noticed the sidewalk was broken, two or three feet from the tree; looked like the roots had pushed up the tiling; had noticed other conditions like that on other sidewalks, but not frequently; "that one would throw

a horse down. I took note of it that day, . . did not measure it. . . This is a correct photograph of it as I saw it."—W. E. Womack, for the plaintiff, testified that he was going home to dinner about 12:20 o'clock, and discovered Mrs. Glogauer down on the ground, and went to her assistance; he had frequently walked along the same place and had never fallen over that place.— A. E. Leybourne testified that he knew Eli Monroe and Lizzie Monroe. They rented a house from witness near the scene of the accident, and had been living there for about 7 years. He was acquainted with the sidewalk, but did not know how long it had been in a defective condition.—Eli Monroe, for plaintiff, testified: "Looking at that picture, that is the house where I live. I have been living there about 7 years. . . I know that tree. I know that broken sidewalk. That sidewalk has been broken like that for about five years before she [Mrs. Glogauer] got hurt. . . That condition was brought about by a root growing under the sidewalk. . . Five years ago it was not as high as it was when this accident happened; it gets higher and higher. . . I saw her [Mrs. Glogauer] fall. She was walking up the street with some other people. A man and his wife. . . Those people with her stopped and picked her up, a man and a lady. . . I had seen her going back and forth up there on the sidewalk day after day, at different times."—Lizzie Monroe for plaintiff, testified that she knew "that broken place in the sidewalk by that tree; [it had] been there a long time before Mrs. Glogauer got hurt. Lots of folks stumbled over it." After Eli and Lizzie Monroe had testified, Mrs. Glogauer was recalled and examined by her attorney. On cross-examination the defendant's attorney asked, "You heard Eli say that there was a lady walking with you when you fell. Was he or not mistaken about that?" The court stated, "You have gone into that."

R. G. McCrary, a witness for the defendant, testified: His father had the contract for paving the street, and witness had charge of placing the brick. The brick, which were four inches wide and eight inches long, were stacked "four high and four thick, about sixteen inches, thirty-two inches wide." The unpaved part of the sidewalk, between the curb and the street, was about thirty-six to forty inches wide. The brick were piled there for convenience in paving the street. The brick did not project over the sidewalk.

They were properly stacked. At the point where Mrs. Glogauer got hurt they were stacked up sixteen inches.—L. T. Morgan, for defendant, testified. Witness is city engineer. There were in 1919 approximately 60 miles of streets in Brunswick; about 11-½ miles of paved sidewalk, and approximately 100 miles of improved sidewalk; about 60 per cent. of the paved sidewalks are of concrete monolithic tiling, the same as on the west side of Norwich street, between I and J streets. The condition in general of these tile sidewalks is very good. "All over town the tile is uprooted." Wherever a tree is growing on the margin, either on the lot or on the sidewalk, it elevates the tiling. Witness has examined the condition of the sidewalk where the injury occurred. There are similar places on the other sidewalk. That condition is general all over town. In May, 1921, witness examined twice during the same day the tile over which he was informed Mrs. Glogauer fell. The tile was elevated higher when he examined it the second time than it was on the first. "Some external force had raised it higher." It was up two and one quarter inches the first, and three inches the second time he examined it. "The average thickness of the tile is one and one fourth inches. I measured this particular tiling. It was one and three quarter inches on the upper edge." The city authorities advised in 1919 that they had no money to spend in taking care of sidewalks, and witness did not spend any money during that year for such purpose. That photograph and that bulged-up tiling between I and J streets explains the condition of that street. The elevation of the tile going north looks, from this photograph, to be just about the thickness of the tile. "When I first examined these, it was not elevated so you could stick your foot under it. When I examined it the second time you could see it had been raised by somebody." This examination was made about the time court met.—N. D. Russell, for defendant, testified: He was clerk of the mayor and council during the years 1918 and 1919. After testifying to a discrepancy between the city's available funds and its expenses, due to extraordinary condition brought about by the war, the defendant's attorney asked the question. "In those years and for a number of years preceding 1919, were any complaints or claims filed with you for injuries sustained by persons falling over alleged defective sidewalks?" The attorney stated to the judge that he expected the answer to be that no such claims

had been filed. The court refused to allow the question answered, on the ground that the answer would be immaterial.

J. M. Lowe, for the defendant, testified that as an employee of the city he went to the corner of I and Norwich streets at one o'clock in the afternoon of a Saturday in May, 1921, and from that hour until 10 o'clock at night counted every person that passed along there. The court interrupted the witness, saying that the testimony was immaterial. The defendant's attorney stated that he expected to show by the witness that 676 people passed at that time without being injured, and that the sidewalk at the place of injury was in the same condition as it was at the time the injury occurred. The court then stated that he held that inadmissible.

H. S. McCrary, for defendant, testified that he had the brick hauled and stacked along the sidewalk. They were "four deep and four wide" on the "margin" between the "curbing and paved sidewalk." The width of the "margin" is about five feet. The width of the brick would take up about 32 inches. There was no reason for piling them on the sidewalk. They were put there for convenience in paving the street. The pile of brick was allowed to stay three or four weeks.

After the charge of the court the jury returned a verdict for the plaintiff for $7500. The defendant made a motion for a new trial on the usual general grounds, and on special grounds as follows: (4) "Because it appears from the testimony of Mrs. Glogauer that she was a married woman living with her husband at the time of the injury for which she brought suit, and before that time and subsequently thereto and up to a few days before the day of trial, and it nowhere appears in the testimony that the said husband had consented that the said Mrs. Glogauer's earnings should be retained by her as her separate estate; wherefore the court should have charged the jury that under the circumstances Mrs. Glogauer could not recover from the City of Brunswick for any decrease in her earning capacity or for any loss of time, occasioned by the injuries received or claimed to have been received by her, while her said husband was living, and the court erred in not so charging in connection with the other portions of the charge relating to recovery for loss or diminution of earning capacity or for loss of time." (5) "Because the court should have

charged the jury that under the evidence they could, in determining the question of negligence or want of negligence on the part of the City of Brunswick, take in consideration the number of miles of sidewalk in said city at the time of the injury, and the financial ability, if such was the case, of the City of Brunswick at that time to keep all the sidewalks in good repair; and the court erred in not so charging." (6) "Because the court erred in refusing to allow counsel for the defendant to ask the plaintiff, when she was recalled for examination by her counsel after a witness for the plaintiff, Eli Monroe, who testified after Mrs. Glogauer had originally testified, had sworn that another lady was with Mrs. Glogauer at the time she fell, as to whether or not Eli Monroe was mistaken in making that statement; defendant having the right, in view of this other testimony on that point by the plaintiff, to attempt to find out from her who, if any, this other lady was." (7) "Because the court erred in refusing to allow counsel for the defendant to ask the witness N. D. Russell, who was then on the stand (said N. D. Russell being then secretary of the commission of Brunswick, and having been for many years previously clerk of the mayor and council of the City of Brunswick), whether in those years (from 1914), and for a number of years preceding 1919, any complaints or claims had been filed with him for injuries sustained by persons falling over alleged defective sidewalks; counsel stating that he expected to show by the witness that no such claims had been filed; and such evidence would have been pertinent, relevant, and material." (8) "Because the court erred in refusing to allow counsel for defendant to ask the witness J. M. Lowe, and refused to allow said J. M. Lowe to testify, how many persons had passed safely over the sidewalk at the place where the injury occurred on a certain day in May, 1921; defendant's counsel stating that he expected the witness to answer that 676 people had passed at that time without being injured, and that the sidewalk at the place of injury was in the same condition it was in at the time the injury occurred; and such evidence would have been pertinent, relevant and material." (9) "Because there was no evidence submitted showing the amount of diminution in the power of Mrs. Glogauer to earn money on account of the injuries claimed to have been sustained by her; and that therefore the court erred in charging the jury that they could consider at all the question of

loss or diminution in earning capacity of Mrs. Glogauer resulting from the injuries complained of."

The defendant excepted to the judgment refusing its motion for a new trial. The Court of Appeals on review made several specific rulings, and affirmed the judgment refusing a new trial. The Supreme Court granted a writ of certiorari, on which error was assigned on the several rulings made by the Court of Appeals.

*R. D. Meader,* for plaintiff in error.

*Krauss & Strong,* contra.

ATKINSON, J. 1. One ruling made by the Court of Appeals was: "While a municipal corporation may not fail in its duty to keep its sidewalks in repair by merely permitting them to exist with certain irregularities upon the surface of the pavement, yet where there is a defect, such as appears from the evidence in the case under consideration, which consists of a raised and irregular surface upon the sidewalk, caused by the root of an adjacent tree growing under the sidewalk and disarranging the tiles and causing one of them to project above the level of the sidewalk, which condition has been allowed to remain for a period of years, it is a question of fact for the jury as to whether or not the city in maintaining the sidewalk in such condition was negligent." In the petition for certiorari this ruling was alleged to be erroneous because: "There was no legal duty resting on the municipal corporation to keep its sidewalks free from the defects which existed in this case, and its failure to keep its sidewalks free from such defects was not negligence, this as a matter of law, all the facts of this case considered, and the Court of Appeals erred in holding that it was a question for the jury in this case to say as to whether or not this was negligence on the part of the municipal corporation." In a case of this kind it should be borne in mind that negligence of the defendant is one question and exercise of care by the plaintiff to avoid injury from the defendant's negligence is another, both of which enter into the ultimate question of the defendant's legal liability for the alleged injury. The assignment of error relates directly to the first. In this State the statutes declare that municipal corporations are liable "for neglect to perform . . their ministerial duties." Civil Code (1910), § 897. Also: "If a municipal corporation has not been negligent in constructing or repairing the same, it is not liable for injuries resulting from

defects in its streets when it has no notice thereof, unless such defect has existed for a sufficient length of time for notice to be inferred." § 898. Also: "Ordinary diligence is that care which every prudent man takes of his own property of a similar nature. The absence of such diligence is termed ordinary neglect." § 3471. The term, "negligent in repairing," as employed in § 898, supra, denotes absence of ordinary diligence or care in the matter of maintaining the way in a reasonably safe condition for passage. In *Herrington* v. *Macon,* 125 *Ga.* 58, 61 (54 S. E. 71), it was said that a municipal corporation "is bound to use ordinary care to keep its public streets and sidewalks which are open for public use in a reasonably safe condition for passage." This expresses a rule which is generally recognized in this State, founded on the statutes and common law (see *Idlett* v. *City of Atlanta,* 123 *Ga.* 821, 51 S. E. 709; *Boney* v. *Dublin,* 145 *Ga.* 339, 89 S. E. 197, Ann. Cas. 1918E, 176), and accords with rules that are applied in other States. Whether ordinary diligence has been exercised in any given instance must depend on the facts of the case.

It is stated in 8 McQuillin on Municipal Corporations (Supp.), 8402, § 2785: "Slight or minor defects in sidewalks resulting in injury, generally speaking, do not establish municipal negligence." In Keen *v.* City of Mitchell, 37 S. D. 247 (157 N. W. 1049, L. R. A. 1916F, 704), it was held that: "An open drain across a highway, 7 or 8 inches deep at the lowest point, and sloping gradually upwards from the center so that it covers 12 feet at the top, is not such a defect as to render the municipality liable for injuries resulting to one jostled off a wagon when the front wheels go into the drain." The case was on appeal from the trial court, in which the judgment for the plaintiff was reversed on the ground that the city was not negligent, because the depression in the street was of such a character that the city officials in charge thereof could not have reasonably foreseen or apprehended the probability of the happening of the accident to plaintiff by reason of the depression. In the course of the opinion it was said: "Where an injury is alleged to have been occasioned by a defect in a street, the inquiry should be, not was there some defect in the street? but was the street, in the condition in which it is proven to have been, in a reasonably safe condition for travel in the ordinary mode at the time the accident happened? and was the accident the natural

and probable result of the use of the street in that condition,—
one that could have been foreseen by those charged with the duty
of maintaining the street? And, where an injury results from
an alleged defect which is not of itself of such dimensions or
character as to make an accident probable, it does not justify the
submission to the jury of the question of the city's negligence.
Bohl *v.* Dell Rapids [15 S. D. 619]; Beltz *v.* Yonkers, 148 N. Y.
67, 42 N. E. 401; Ibbeken *v.* New York, 94 N. Y. Supp. 568;
Grant *v.* Enfield, 11 App. Div. 358, 42 N. Y. Supp. 107; Hamilton
*v.* Buffalo, 173 N. Y. 72, 65 N. E. 944, 13 Am. Neg. Rep. 173;
Morgan *v.* Lewiston, 91 Me. 566, 40 Atl. 545, 4 Am. Neg. Rep.
268; Clifton *v.* Philadelphia, 217 Pa. 102, 9 L. R. A. (N. S.)
1266, 118 Am. St. Rep. 906, 66 Atl. 159, 10 Ann. Cas. 537; Dayton
*v.* Glaser, 76 Ohio St. 471, 12 L. R. A. (N. S.) 916, 81 N. E.
991; Elam *v.* Mt. Sterling, 132 Ky. 657, 117 S. W. 250, 20 L.
R. A. (N. S.) 512, and note, pages 598 to 618. In Beltz *v.* Yonkers,
where the alleged defect was a hole 2-½ inches deep, 7 inches wide,
and 2 feet long in a stone sidewalk, the New York Court of Ap-
peals, among other things, said: 'There are very few, if any, streets
or highways that are or can be kept so absolutely safe and perfect
as to preclude the possibility of accidents; and whether in any
case the municipality has done its duty must be determined by the
situation and what men knew about it before, and not after, an
accident. When the defect is of such a character that reasonable
and prudent men may reasonably differ as to whether an accident
could or should have been reasonably anticipated from its existence
or not, then the case is generally one for the jury; but when, as
in this case, the defect is so slight that no careful or prudent man
would reasonably anticipate any danger from its existence, but
still an accident happens which could have been guarded against
by the exercise of extraordinary care and foresight, the question of
the defendant's responsibility is one of law. Assuming that the
defendant's officers were men of reasonable prudence and judg-
ment, could they, in the . . exercise of these qualities, have
anticipated this accident or a similar one from the existence of
this depression in the walk? They could undoubtedly have repaired
it at very little expense, but the omission to do so does not show
or tend to show that they were negligent, unless the defect was
of such a character that a reasonably prudent man would anticipate

some danger to travelers on the walk if not repaired. If the exist-ence of such a defect is to be deemed evidence of negligence on the part of the city, then there is scarcely any street in any city that is reasonably safe within the rule; and when accidents occur, the municipality must be treated, practically, as an insurer against accidents in its streets. The law does not prescribe a measure of duty so impossible of fulfilment, or a rule of liability so unjust and severe. It imposes upon municipal corporations the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care. But when an accident happens by reason of some slight defect from which danger was not reasonably to be anticipated, and which, according to common experience, was not likely to happen, it is not chargeable with negligence.' In Dayton *v.* Glaser, involving an alleged defect in a street consisting of a depression in a pavement 4 inches deep, extending over 3 or 4 square feet of surface, the Supreme Court of Ohio held that such defect was not of sufficient magnitude to render such street not in a reasonably safe condition for travel, and that negligence could not be imputed against the city by reason of the existence of such defect, on the ground that accidents could not reasonably be anticipated as happening by reason of such slight defect. In Grant *v.* Enfield, 11 App. Div. 358, 42 N. Y. Supp. 107, where the injury resulted from a hole in the highway, basin-like in shape, several feet in length, and 4 inches deep, it was held that the city could not anticipate accidents which might happen by reason thereof. In Morgan *v.* Lewiston, 91 Me. 566, 40 Atl. 545, 4 Am. Neg. Rep. 268, where the plaintiff was injured by stumbling at the junction of two sidewalks, where there was a difference of 6 inches in grade, the court ruled, as a matter of law, that the sidewalks were in a reasonably safe condi-tion for travel, and that negligence could not be imputed to the city by reason of the existence of such defect. In Messenger *v.* Bridgetown, 31 Can. S. C. 379, a mound of earth 8 inches in height in a public street was held not to constitute a defect of sufficient magnitude to charge the city with negligence in failing to keep its streets in a reasonably safe condition. In Clifton *v.* Philadelphia, 217 Pa. 102, 9 L. R. A. (N. S.) 1266, 118 Am. St. Rep. 906, 66 Atl. 157, 10 Ann. Cas. 537, where an injury occurred by stepping into a rut some 5 or 6 inches deep and several feet long,

across a highway, it was held that the accident had happened by reason of a slight defect from which danger was not reasonably to be anticipated, and that the municipality was not chargeable with negligence, the duty imposed by law only being to exercise ordinary care to see that the highway is safe for traveling."

It will be observed that the above decision had reference to a defect in a street where an injury resulted to a person riding in a vehicle, but it was recognized that the principles applied would apply also in cases of an injury to pedestrians where the defect was in the sidewalk. Some of the cases cited in the opinion were of that character. In Terry v. Village of Perry, 199 N. Y. 79 (92 N. E. 91, 35 L. R. A. (N. S.) 666, 20 Ann. Cas. 796), it was held that "A municipal corporation is not liable for injury to a pedestrian, caused by his falling on a sidewalk because of a depression due to the setting of one edge of a concrete square in the walk 1-½ inches below the level of the adjoining square, although one or two persons had tripped on the unevenness before, and one of the trustees of the municipality had slightly turned his ankle at the spot, and reported the fact to the board of trustees." In the opinion the language quoted as above from Beltz v. Yonkers, was set forth, and the principles therein announced were applied. Another case cited and applied was Butler v. Oxford, 186 N. Y. 444 (79 N. E. 712). In that case the facts were that "the surfaces of a stone and an adjoining dirt sidewalk were not flush at their junction, the surface of the former rising above that of the latter by a distance of about 2-½ inches in the center of the walk, and about 5 inches on the outer edge thereof. The plaintiff, in passing over the dirt walk upon the stone walk in the nighttime, stumbled against the projecting edge of the stone, fell and met with the injury for which the action was brought." It was held that the defect was too insignificant for its existence to be the foundation of a liability upon the part of the city for an injury resulting to a pedestrian who received a fall on account of the defect. In City of Richmond v. Schonberger, 111 Va. 168 (68 S. E. 284, 29 L. R. A. (N. S.) 180), it was held: "A municipal corporation is not liable for injury to a pedestrian who, in attempting to cross a street, stumbles and falls because of a piece of stone projecting 2 inches above the level of the crosswalk, where the walk is constructed of two level strips of paving stone, with the inter-

vening space filled with loose stones, and covered with dirt." The opinion quoted approvingly the following from Bigelow v. Kalamazoo, 97 Mich. 121 (56 N. W. 339): "Even in our most prominent thoroughfares, paved in the most approved manner, curbs must be carried, and at the crossings they are from 2 to 6 inches higher than the pavement. The curb must be left bare, and inattentive people be liable to stumble, or, as is frequently done, a plank is placed upon an incline, upon which pedestrians carelessly advancing are liable to slip. In either case there is the minimum of danger. The walk is not absolutely safe, but it cannot be said that it is not in a reasonably safe condition. The same is true of nearly all of our alley crossings. Gutters are necessarily left for the passage of water. These crossings are not absolutely safe, but they may be reasonably so. Neither streets, sidewalks, nor crosswalks, can be constructed upon a dead level. People are liable to stumble over a Persian rug upon a parlor floor, and streets cannot be made less dangerous than drawing rooms. . . Cities are not required to keep streets in a condition absolutely safe for travel. A crosswalk must be reasonably safe,—reasonably safe in view of the purpose for which it is constructed, the necessary uses of the street, and all the varying conditions."

In City of Lexington v. Cooper, 148 Ky. 17 (145 S. W. 1127, 43 L. R. A. (N. S.) 1158), it was held: "A niche in a sidewalk to enable it to pass a standing tree, which, after the tree is removed, is filled with dirt and sodded, so as to leave the surface 2-1/2 inches below the surface of the walk, is, as matter of law, not a defect which will render the municipality liable in case a pedestrian slips or stumbles over the unevenness and falls to his injury." In the course of the opinion it was said: "Under the facts, the trial court erred in not granting defendant's motion for a peremptory instruction. The city is not a guarantor of the safety of pedestrians upon her sidewalks. It is enough if the streets are kept in a reasonably safe condition for those exercising ordinary care for their own safety. Customarily, of course, the question of whether a sidewalk or street is in an ordinarily safe condition is for the jury; and yet it would be manifestly begging the question to say that, no matter how slight the inequality of surface, or how immaterial the obstruction, the case should go to the jury. Covington v. Belser, 137 Ky. 125, 123 S. W. 249. In the case of Louis-

ville *v.* Uebelhor, 142 Ky. 151, 134 S. W. 152, the action was to recover because of injuries sustained by stepping into the depression worn by wagon wheels between the adjoining flat ends of crossing-stones. The evidence of the plaintiff showed that the depression was 4 or 5 inches deep, while the evidence of the city showed that it was 1 or 1-½ inches deep. This court said that, if it were only an inch and a half or 2 inches in depth, a smooth worn place in the stones, it would not be such a condition as to indicate negligence on the part of the city. The opinion further remarked the customary statement that the city had no duty beyond that of keeping its streets reasonably safe. It added that there must be some point short of perfection that is not actionable negligence; that such depressions of an inch or so are quite common in all cities; and that that which is so customary may be regarded as ordinarily safe and as the standard." See also Gastel *v.* City of New York, 194 N. Y. 15 (86 N. E. 833, 128 Am. St. R. 540, 16 Ann. Cas. 635).

In the case of *City of Atlanta* v. *Bellamy, 72 Ga. 420,* a verdict was returned for the defendant. The plaintiff's motion for a new trial was granted, and the defendant excepted. The judgment of the trial court was affirmed on the ground that a discretion was vested in the trial court with which the Supreme Court would not interfere unless the discretion was palpably abused. The statement of facts contains the following: "On the trial, it was proved that plaintiff stepped into a depression or hole in the sidewalk, while passing along, about dusk in the evening, fell and was injured. The evidence as to plaintiff's habits of sobriety and the nature and extent of the injury was conflicting. As to the character of the hole into which plaintiff stepped, he testified as follows: 'The hole in the sidewalk, which caused my fall, was about four inches wide, I think, and was as long as the flagstone was wide, say about eighteen inches long, and I should judge it was several inches deep. It was about dusk when I stepped on the edge of the hole, and I did not see the hole. I don't think I ever saw the identical hole before. At the time I fell, I was walking in ordinary way.' Lynch, a witness for the plaintiff, described it as follows: 'The hole had been there seven or eight months before the Saturday evening on which I saw a man fall and two negroes pick him up. A common brick would more than fill up the hole.

It was where two flagstones did not exactly come together, and most of the time a brick was in it, and frequently it was filled up with dirt, but the water would occasionally wash it out. The hole was not as deep as a brick of common size, and about as long. The hole was longer than a brick, say about nine or ten inches, about four inches wide, and not quite as deep as a brick is thick, less than two inches deep. I filled the hole up myself several times, but it would wash out again. The flagstones did not fit up close at first, and my opinion is that the hole was there from the time the sidewalk was made.' " The opinion of the court follows: "This is the first grant of a new trial in this case, which we think was hardly warranted by what is disclosed in the record. There was some evidence, however, upon which the jury might have found differently, though its decided weight, as it appears to us, is in favor of the verdict. It is impossible to place ourselves in the position of the able and experienced judge who presided at the trial, and to have communicated to us what occurrences, during its progress, may have influenced his action; doubtless he had what he deemed sufficient and satisfactory reasons for his course. He alone can exercise a sound discretion in granting or refusing a new trial whether the verdict is sustained by the decided and strong weight of the evidence or by slight evidence only. It would require an extreme case to justify our interference with the exercise of this discretion—one in which an abuse of the power was palpable. This is the invariable rule of our action. We think it conservative, prudent, and wise, and although in some instances it may work hardship, yet in the vast majority it tends to the maintenance of right and justice. We hesitate not to say, from what we can gather from the proceedings before us, that we would not have disturbed this verdict; but, as before remarked, we had none of the advantages of observation possessed by the judge who conducted the trial and saw and heard all that transpired in its progress. We think that no encouragement should be given to actions brought against towns and cities for the recovery of damages resulting from slight depressions' or elevations made by displacing paving or flagstone, or bricks used in the construction of sidewalks and streets. As was remarked by Mr. Justice Crawford, in *Rivers* v. *The City Council of Augusta, 65 Ga.* 378 [38 Am. R. 787], 'Calamities and accidents are common to all; but because they oc-

cur, it by no means follows that such as may be so unfortunate are entitled to recover compensation in damages out of some person, either natural or artificial, who may be able to respond, notwithstanding it appears that such impressions are beginning largely to prevail.' We cannot entertain the idea that 'municipal corporations are insurers against accidents upon streets and sidewalks, or that every defect therein, though it may cause the injury sued for, is actionable. It is sufficient if the streets (which include sidewalks and bridges thereon) are in a reasonably safe condition for travel in the ordinary mode, by night as well as by day.' To require higher care and diligence at the hands of the public authorities would exceed the resources at their command, and would entail upon the community an unsupportable burden. It is impossible to ascertain speedily when the bricks, paving, and flagstones on the streets are out of place, and to keep promptly in repair at all times trifling defects resulting from such causes. In all suits for damages resulting from such causes, these considerations should have weight with juries, whose peculiar province it is to pass upon questions of negligence, under directions from the court."

In *City of Atlanta* v. *Brown, 73 Ga.* 630, the verdict was in favor of the plaintiff, and the defendant's motion for new trial was overruled. The ground of negligence alleged was stated by the court as follows: "The plaintiff brought suit to recover damages from the City of Atlanta for a personal injury, which she alleged was done her by reason of a fall, while she was walking, with all care and caution, on the north side of East Mitchell street in said city; that this fall was on a rough sidewalk, which had been made of bricks, and in consequence of the rough and broken condition of the same and the steep grade of an adjoining stone pavement; that the bricks which composed the said sidewalk had been torn up and loosened from their positions, and it was in an unsafe condition; that the city, though knowing at that time, and previous thereto, the condition of the sidewalk, had, through gross negligence, failed to repair it, so as to make it a reasonably safe way for persons to pass over." The judge stated in the order overruling the motion for new trial: "That, in his judgment, the alleged defect was or should not be an actionable defect, as to require the city to remedy such slight imperfections in the side-

walks would be to impose upon it an extraordinary degree of diligence; but as he had fully and fairly charged the jury as to the defect being actionable, and they having found in favor of the plaintiff on that question, he felt that he should not disturb their verdict." In the opinion it was said: "It is insisted that this was not an untrammeled and free exercise of the judge's discretion; that to refuse the motion, with such impressions resting upon his mind, was a virtual, if not actual, abuse of such discretion. To this, however, we do not assent; it seems to us that it does not amount to an abuse, but is rather a reluctant forbearance to exercise his discretion, although strongly inclined to do so, in favor of the defendant. Upon the whole, he concluded to let the verdict stand, and we are to look to this conclusion as the exercise of his discretion, rather than to the reasons that led him to hesitate, before interfering with the finding of the jury. A new trial was granted by the judge of the lower court in *The City of Atlanta* v. *Bellamy, 72 Ga.* 420, and we refused to interfere, although we were well satisfied that the verdict was supported by the law, and was in accordance with the decided weight of the evidence. Had we been on the jury, we would have returned the same verdict; but as the discretion to grant or refuse the new trial was in the presiding judge, and we differed with him only as to the propriety of its exercise, even in that extreme case we could not say that it had been palpably abused, and did not feel authorized to interpose. We could, perhaps, interfere with more propriety in a case where the verdict was decidedly and strongly against the weight of evidence and a new trial had been refused, than in one where, under such circumstances, it had been granted. There are certainly decisions justifying interference in the case suggested. 37 *Ga.* 557; 35 *Id.* 271. Discretion in refusing a new trial should not be arbitrarily exercised. 54 *Id.* 224; 31 *Id.* 365; 30 *Id.* 212. But in cases of a preponderance of evidence, this court has never controlled the discretion of the lower court in granting or refusing a new trial. Code, §§ 3713, 3717, and citations. Yielding our hearty assent to this rule, we must decline to interfere with the exercise of discretion in refusing a new trial in this instance. The evidence here is conflicting upon the main points in controversy, and when closely scrutinized is as much, or perhaps more, in favor of than against the verdict."

In *Dempsey* v. *City of Rome,* 94 *Ga.* 420 (20 S. E. 335), it was held: "The evidence showing that the plaintiff was injured at night by getting his foot fast in a hole which had existed for two weeks or longer in a plank crossing upon one of the most frequented streets of the city, the plaintiff at the time using the crossing as one of the public for a footway in passing over it, the case was one for submission to the jury on the question of negligence by the city authorities in having and leaving the crossing in that condition. The evidence further showing that the hole extended longitudinally along the crossing, and was about ten or fifteen inches long, three inches wide, and two or three inches deep, and that the plaintiff had observed it a week or two before he was injured, and that at the time he stepped into it he 'had his hands in his pants pockets, was walking very peart, and wasn't paying any attention,' it was a question for the jury whether, under these circumstances, he was negligent in not thinking of the defect in the crossing, looking out for it and taking care for his own safety. It was error to grant a nonsuit." It would seem on principle, as stated in the decisions from other courts and especially the decision in City of Lexington *v.* Cooper, supra, and the views expressed by this court in *City of Atlanta* v. *Bellamy,* supra, with reference to municipal liability for minor defects in sidewalks of towns and cities, that the size and character of the defect in the sidewalk which caused Mrs. Glogauer to fall and be injured were such that, in the absence of other evidence to show its dangerous character, such as that other pedestrians using the sidewalk had suffered accidents from the defect, the city could not reasonably have anticipated her injury from such defect, and consequently, that the omission of the city to repair the sidewalk was not such a failure to exercise ordinary care as would show actionable negligence. It would seem that to hold the city liable for an injury caused by such a defect would be to require extraordinary care—a higher degree of care than the law exacts from the city as to the condition in which it should maintain its sidewalks, and that it should be held as a matter of law that the city was not negligent. But notwithstanding the views of the court in *City of Atlanta* v. *Bellamy,* which were reaffirmed in *City of Atlanta* v. *Brown,* supra, this court refused to disturb the discretion of the trial court in the matter of granting or refusing to grant a first new trial, which

it would have been required to do had the defect been insufficient as a basis for a charge of negligence. In the *Bellamy* case, it was stated: "There was some evidence, however, upon which the jury might have found differently [for the plaintiff], though its decided weight, as it appears to us, is in favor of the verdict [for the defendant]." In the *Brown* case, 73 *Ga.* 630, it was said: "The evidence here is conflicting upon the main points in controversy, and, when closely scrutinized, is as much, or perhaps more, in favor of than against the verdict [for the plaintiff]." As appears from the reports of the cases which are fully set out above, the defects in the sidewalks which produced the injuries were minor defects. Those decisions hold in effect that the minor defects under consideration were sufficient upon which to submit to the jury the question of negligence of the city in allowing the sidewalk to remain in such condition, and to support a finding for the plaintiffs. Each of them was rendered by all of the Justices of the court as it was then constituted; and never having been overruled, they are binding as precedents. While the defect involved in the present case is somewhat different from those involved in the cases mentioned above, they are all minor defects so nearly similar that the cases cannot be distinguished upon principle. Accordingly the court is constrained to hold that the existence of the defect in the present case for the length of time and under the circumstances as disclosed by the evidence was sufficient to carry the case to the jury on the question of the defendant's negligence.

2. Another ruling made by the Court of Appeals was: "A person injured by stumbling over a raised and displaced tile projecting above the level of the sidewalk, over which such person, who had the capacity to see, was traveling in broad daylight, is not barred from a recovery upon the ground of contributory negligence, where it appears that such defective condition was to some extent obscured by a shadow, and that such person had no actual knowledge of the existence of such defect in the sidewalk." In the petition for certiorari that ruling was alleged to be erroneous because: "There is no sufficient evidence that the defective condition was to some extent obscured by a shadow, and there is no evidence that Mrs. Glogauer had no actual knowledge of the existence of such defect, the evidence showing that she must have

had such knowledge or that by the exercise of ordinary care she could have had such knowledge, and that she was therefore guilty of contributory negligence if there had been any negligence on the part of the city." The evidence was insufficient to show that the defect was obscured by any shadow. It was alleged in the petition that a shadow from the pile of bricks stacked along the east side of the sidewalk tended to obscure the existence of the defect, but this was denied by the answer. The testimony of the plaintiff showed that the sidewalk in question ran north and south, and that the accident occurred at 12 o'clock noon on December 29th. The only other witness who testified on the subject as to time stated that it was about 12:20 o'clock. In these circumstances there could not have been a shadow from the stack of bricks which extended along the east edge of the sidewalk. The plaintiff testified in one place: "Those bricks being piled up there had the effect of casting a shadow on the sidewalk," but did not testify that a shadow was produced in any other way, nor did any other witness so testify. At another place the plaintiff testified: "Those bricks I saw there were laid across, but you could not see a thing. With the sun shining in your face you could not have seen a shadow." The plaintiff also testified to the correctness of the photographs that were introduced in evidence, which was the only other evidence that could have been looked to to ascertain whether a shadow existed from trees or other causes. The photographs were taken at a subsequent date which was not disclosed by the evidence, nor was the hour of the day in which the photographs were taken disclosed; but whatever the date or hour of the day, they failed to disclose any shadows. In these circumstances the plaintiff's evidence did not authorize an inference that the defect was obscured by a shadow. The decision of the Court of Appeals pronounced as a matter of law that in the circumstances stated in its decision the plaintiff would not be barred from a recovery upon the ground of contributory negligence. This was an erroneous ruling. Contributory negligence is generally a question for the jury; but whether or not the evidence upon this subject was sufficient to carry the case to the jury will not be decided, because that question was not made in the motion for new trial that was under review, nor by the assignments of error upon the judgment of the Court of Appeals.

3. Another ruling made by the Court of Appeals was: "Assuming that the sidewalk lay north and south, and that a stack of brick was on the eastern side, and that therefore at the time when the plaintiff was hurt it was impossible for such brick to cast a shadow towards the west after the noon hour, this fact will not conclusively rebut the testimony of a witness to the effect that the brick caused a shadow over the unrepaired portion of the sidewalk, when it appears from the evidence that there were trees along this portion of the sidewalk and a fence to the west, from which facts it could be inferred that the plaintiff's testimony as to the existence of the shadow was true, and a jury could infer that the plaintiff's attributing such shadow to the bricks was a mistake." In the petition for certiorari this ruling was alleged to be erroneous because: "There was not only no sufficient evidence that a shadow was cast on this defect by the pile of brick, but there was no evidence that there were *trees* along this portion of the sidewalk that might have cast such a shadow; the evidence being that there was only one tree near this place, and the evidence showing that such a shadow as might have hidden or have obscured this defect could not have been cast by this tree; and the Court of Appeals erred in finding that such a shadow could have been cast at the time and place by such a tree or trees." This criticism upon the opinion is well founded. The facts bearing upon the subject sufficiently appear in the preceding division.

4. Another ruling made by the Court of Appeals was: "The plaintiff, a widow at the time of the trial, although a married woman at the time of the injury and the filing of the suit, who was seeking to recover for personal injuries alleged to have been caused by a defect in a sidewalk, was entitled to recover for any damage which she might have sustained by reason of impaired earning capacity, since it appears that no objection was urged that she could not recover for such item of damage in the pending suit. An instruction by the trial judge that the jury must compute such damage from the time of the trial was not error as against the defendant. The evidence made such an issue; and the charge was not further objectionable upon the ground that it was not adjusted to the evidence." In the petition for certiorari this ruling was alleged to be erroneous because: "The objection made in the motion for new trial was that the trial judge should

have charged the jury that the plaintiff could recover for loss of earning capacity, etc., only from the date of the death of her husband, instead of which he apparently charged that she might recover for loss of earning capacity from the date of the accident; at least the language of the charge in this respect was obscure and ambiguous and calculated to mislead the jury; and the duty was upon the judge to charge the law correctly and plainly, whether specifically requested or not, that is, that she could only recover for loss of earning capacity from the date of the death of her husband, it appearing from the evidence that they were living together at the time of the accident and so continued up to his death, three days before the trial of this case, with no evidence of any consent on his part that her earnings should be her separate property or estate; and the Court of Appeals erred in not passing specifically on this question, as made in the 4th ground of the amended motion for new trial. The language of the charge could not be held plainly to mean, in connection with the context of the charge, that the jury must compute such damages from the time of the trial, and the Court of Appeals erred in holding that it did; and the Court of Appeals also in this paragraph erred in holding that the charge was adjusted to the evidence." Another ruling made by the Court of Appeals was: "The financial inability of the municipality to keep its sidewalks in repair will not excuse it in negligently allowing the sidewalks to remain unrepaired." In the petition for certiorari this ruling was alleged to be erroneous, because: "The Court of Appeals erred in holding that the financial inability of the municipality to keep its sidewalks in repair would not excuse it in negligently allowing the sidewalks to remain unrepaired; and the Court of Appeals erred in not sustaining the 5th ground of the amended motion for new trial, which charges that the trial judge erred in not charging the jury that under the evidence they could, in determining the question of negligence or want of negligence on the part of the City, take into consideration the number of miles of sidewalk in the city at the time of the injury, and the financial inability, if such was the case, of the City of Brunswick at that time to keep all the sidewalks in good repair; and the Court of Appeals erred in not passing on this ground of the motion for new trial." These divisions of the opinion relate to grounds of the motion for new trial which complain of the omis-

sion of the court to charge certain contentions of the defendant without any written request therefor. The contentions referred to were not made in the pleadings, but rested only on the evidence that was introduced on the trial. It has been held by this court: "Where in a civil case the judge, in stating the contentions of the parties, fully and fairly submitted the issues raised by the pleadings in the case, the failure of the court, in the absence of a request, to instruct the jury upon a contention of one of the parties not raised by the pleadings, although supported by some evidence in the record, is not cause for a new trial. *Marlin* v. *Nichols,* 127 *Ga.* 705 (56 S. E. 995); *Cordele Sash &c. Co.* v. *Wilson Lumber Co.,* 129 *Ga.* 290 (2) (58 S. E. 860); *Hewitt* v. *Lamb,* 130 *Ga.* 709 (2) (61 S. E. 716, 14 Ann. Cas. 800)." *McLean* v. *Mann,* 148 *Ga.* 114 (2) (95 S. E. 985); *Bridges* v. *Williams,* 148 *Ga.* 276 (2) (96 S. E. 499). Under this rule, the Court of Appeals would not have been required to reverse the judgment of the trial court. While the decision of the Court of Appeals was not accurate, the judgment will not be reversed upon these grounds alone.

5. Another ruling made by the Court of Appeals was: "The fact that many other people had safely passed over the same sidewalk when in the same condition as when the plaintiff was injured, and the fact that no claims for injuries to persons by reason of defective sidewalks had been filed against the city prior to the plaintiff's injuries and while the sidewalk upon which the plaintiff was injured was in the same defective condition, are immaterial to throw any light upon the question of ordinary care upon the part of the city, and were in no wise relevant to the issues in the case." In the petition for certiorari this ruling was alleged to be erroneous because: "The Court of Appeals erred in holding, 1st, That the fact that many other people had safely passed over the sidewalk where the injury occurred, when in the same condition as when the plaintiff was injured, was immaterial and irrelevant, the contention of petitioner being that evidence showing or tending to show that the sidewalk in question and under the same conditions was ordinarily safe for pedestrians was relevant and admissible; and, 2nd, In holding that the fact that no claims for injuries to persons by reason of defective sidewalks had been filed against the city prior to plaintiff's claim was immaterial and irrelevant, the contention of petitioner being that all such evidence was relevant

and admissible for the purpose of showing or tending to show that the sidewalks of said city, which were generally in the same condition as the sidewalk where and when the injury occurred, were ordinarily safe for pedestrian travel." In the case of Terry *v.* Village of Perry, supra, it was said: "In cases where the depression or difference in grade is slight, even where, under the rules of this court, they are so slight that, as a matter of law, they are not ordinarily sufficient on which to base a recovery against a municipality, evidence of the experience of others in tripping or falling over the same is competent for the purpose of showing, if true, that there is something peculiar or unusual about the formation of the difference in grade or of the depression that makes it dangerous to an extent that an ordinarily prudent person in charge of sidewalks, with knowledge of such peculiar depression, would repair it." To the same effect is the decision of Gastel *v.* City of New York, supra. At the foot of the opinion is a list of cases cited as holding such evidence admissible, and another list applying the contrary doctrine. Included in the first list is the case of *Gilmer* v. *Atlanta,* 77 *Ga.* 688, where it was held: "Where suit was brought against a municipal corporation for damages incurred by reason of certain roots of a tree having been negligently left projecting above a sidewalk, in which roots a foot of a pedestrian at night was caught, causing her to trip and fall, and injuring her, it was admissible to show by another person that he was tripped and thrown down some days previously by the same roots at the same place. . . In cases of doubt as to the admissibility of evidence, the current of authority in this State is to admit it and leave its weight and effect to be determined by the jury." This case was cited approvingly in *Goodman* v. *State,* 122 *Ga.* 111 (49 S. E. 922). If it would be admissible on the question of the dangerous character of the defect in the sidewalk to prove that another person passing along the way at a subsequent time stumbled over the obstruction, upon similar reasons it should be admissible in such case to show where another person under like circumstances or a large number of persons under like circumstances walked along the way and did not suffer any accident on account of the defect. The trial court should have admitted the evidence, its weight to be determined by the jury. See also *City Council of Augusta* v. *Hafers,* 61 *Ga.* 48 (3) (34 Am. R. 95), where it was held: "The question being

as to whether the system adopted by the city in regard to allowing cellars on its sidewalks was reasonably calculated to insure the safety of those who travel thereon, evidence that children upon different occasions had previously fallen into such openings was admissible."

6. Another ruling made by the Court of Appeals was: "Where two witnesses have made conflicting statements in their testimony, it is not error for the court to refuse to allow one of the witnesses, upon cross-examination, to state whether or not the other witness had testified correctly." In the petition for certiorari this ruling was alleged to be erroneous because: "While the general statement of the law as made in this paragraph may be true, yet the Court of Appeals erred in applying it to the facts in this case, because the plaintiff in her direct examination had sworn that no other woman was with her at the time of the accident; following after her testimony a witness introduced in her behalf had sworn that another woman was with her at that time; thereafter, upon the plaintiff being recalled in her own behalf, she was on cross-examination asked if her witness had been mistaken in stating that another woman was with her at the time of the accident; the trial judge ruling out this question on the ground, not that it was trying to impeach the testimony of the other witness, but that this matter had already been gone into, whereas it had not been gone into in the light of this testimony of plaintiff's witness that there was such another woman; and the Court of Appeals erred in not holding that this question was relevant, material and admissible." While the trial judge put his ruling upon the ground that this matter had been previously gone into and while this ruling was exclusively put upon that ground, we do not think that a new trial ought to be granted on this ground, because it is not proper to undertake to prove by one witness that the testimony of another witness was not correct.

7. The last assignment of error relates to the sufficiency of the evidence to support the verdict; but as the judgment affirming the judgment of the trial court will be reversed and another trial will be necessary, at which the evidence may not be the same, no ruling will be made upon this assignment of error.

*Judgment reversed. All the Justices concur, Russell, C. J., specially.*